**Norfolk**

STEVEN HOWARD KAUFMAN

v.

DEBORAH SCOTT BARNEY KAUFMAN

No. 1323-90-1

Decided August 27, 1991

1202

COUNSEL

Jerrold G. Weinberg (Debra C. Albiston; Weinberg & Stein, on briefs), for appellant.

Henry M. Schwan, for appellee.

OPINION

**KOONTZ, C.J.**—Steven Howard Kaufman appeals a July 20, 1990 circuit court decree granting Deborah Scott Barney Kaufman child and spousal support, and an award of equitable distribution of the parties' marital property pursuant to Code § 20-107.3. Dr. Kaufman contends the trial court erred by (1) awarding Mrs. Kaufman both periodic and lump sum spousal support; (2) distributing the parties' non-pension marital property; (3) changing the valuation of Dr. Kaufman's stock in his medical professional corporation on remand; and (4) requiring him to pay interest on the present value of Mrs. Kaufman's share of his pension assets from August 9, 1984, the date of the last evidentiary hearing before the commissioner in chancery.

This case returns to us after it was affirmed in part, reversed in part, and remanded by our opinion in *Kaufman v. Kaufman*, 7 Va. App. 488, 375 S.E.2d 374 (1988). Initially, the trial court granted Mrs. Kaufman $900 monthly child support, $3,000 monthly spousal support, $34,000 lump sum spousal support, an equitable distribution award of $30,264, $14,780 in pension benefits when received, and attorney fees and costs. On appeal, we held the trial court erred by awarding spousal support before it determined what income from the monetary award would be available to Mrs. Kaufman. *Id.* at 493, 375 S.E.2d at 377. We remanded the matter with the direction that spousal support "be reconsidered in light of the need for such award and the ability to pay after the monetary awards have been determined." *Id.* at 493-94, 375 S.E.2d at 377. We also reversed the monetary award and directed the trial court on remand to reconsider the properties and

their values, and to determine the amount of the monetary award, if any, to be made. *Id*. at 498, 375 S.E.2d at 379.

The facts underlying this case are fully presented in our first opinion. *See Kaufman*, 7 Va. App. 488, 375 S.E.2d 374. Therefore, we summarize the facts only as necessary to explain our decision here. The parties were married in 1973 and have one child born of the marriage in 1981. Dr. Kaufman left the marital home in 1982 and Mrs. Kaufman filed her bill of complaint seeking a divorce in 1983. Dr. Kaufman is a medical doctor specializing in pulmonary medicine. He was employed as a resident when the parties married. Mrs. Kaufman worked as an assistant manager of a clothing store during the first five years of the parties' marriage, but did not work during the remainder of the marriage. When this suit began, Dr. Kaufman's annual salary was approximately $120,000. The parties' home and furnishings were jointly owned and had a net value of approximately $35,325. The parties also owned $29,254 of non-pension marital property along with Mrs. Kaufman's jewelry, valued at $4,010. In pension marital property, Dr. Kaufman owned an Individual Retirement Account worth $2,000, a Profit Sharing Plan worth $20,060, and a Money Purchase Plan worth $7,500. Finally, Dr. Kaufman owned by purchase contract a one-third interest in Pulmonary Consultants of Tidewater, Inc. (Pulmonary), which the court initially found had a negative value of $8,051.

Following our remand to the trial court, the trial court determined that no evidentiary hearing was warranted or required to follow this Court's mandate. The parties submitted memoranda addressing the proper valuation date of the marital property, the appropriate date for determining the spousal and child support needs, the appropriateness and amount of a lump sum spousal support award, and the amount of the periodic spousal and child support awards. The trial court sent the parties several letters previewing its anticipated final determinations, to which the parties responded. After considering the parties' arguments and responses to its letters, the trial court issued its amended final decree dated July 20, 1990. Pursuant to the equitable distribution of the marital property, the trial court ordered Dr. Kaufman to transfer to Mrs. Kaufman his interest in the parties' house, furnishings and personalty located in the house while allowing Mrs. Kaufman to keep her jewelry "in full satisfaction of all obligations

of [Dr. Kaufman] as to non-pension marital assets." In reaching its decision, the trial court changed its prior valuation of Dr. Kaufman's interest in Pulmonary from negative $8,051 to no monetary value. In total, Mrs. Kaufman was awarded more than one-half of the non-pension marital property. As part of the equitable distribution, the trial court awarded Mrs. Kaufman $14,780 as the present value of her share in Dr. Kaufman's pension plans, plus eight percent annual interest from the evidentiary hearing date of August 9, 1984. The trial court then awarded Mrs. Kaufman lump sum spousal support of $30,000, payable over six years in $5,000 annual installments, periodic spousal support of $2,796.85 per month, and child support of $730 per month. In conclusion, the court's amended decree stated that its prior decree of November 28, 1986 remains unchanged in all other respects and in full force "to all of which the parties object as their interests are adversely affected." However, neither party endorsed the amended final decree nor did they state any grounds for objection to the decree.

Initially, we address Mrs. Kaufman's Rule 5A:18 motion to dismiss based on Dr. Kaufman's failure to endorse the amended final decree or to state any grounds for objection to the decree. Upon review of the record, we find this case is controlled by *Weidman v. Babcock*, 241 Va. 40, 44, 400 S.E.2d 164, 167 (1991), where the trial court was presented several opportunites to rule on the issues presented, rather than *Lee v. Lee*, 12 Va. App. 512, 404 S.E.2d 736 (1991), where the appellant only endorsed the court's order "Seen and Objected to" without specifying to the court his objections or the grounds therefor prior to or at the time of the entry of the order. Dr. Kaufman, despite his failure to endorse or to list his objections on the decree, made known to the trial court his position through his memoranda and other written correspondence with the court prior to the court's issuance of its amended final decree. *See Weidman*, 241 Va. at 44, 400 S.E.2d at 167. Furthermore, the trial judge specifically acknowledged the existence of Dr. Kaufman's objections by inserting in the decree the provision that "the parties object [to the court's determinations] as their interests are adversely affected." Hence, we find Dr. Kaufman afforded "the trial court an opportunity to rule intelligently on the issues presented, thus avoiding unnecessary appeals and reversals." *See id*. Accordingly, we deny Mrs. Kaufman's motion to dismiss and address the merits of Dr. Kaufman's appeal.

■ On appeal, Dr. Kaufman first argues the trial court erred by awarding Mrs. Kaufman lump sum spousal support in addition to periodic spousal support.

> Code § 20-107.1 provides that the trial court, in its discretion, may decree that maintenance and support of a spouse be made in periodic payments, or in a lump sum award, or both. The exercise of the trial judge's discretion will not be disturbed upon appeal unless it has been exceeded.

*Blank v. Blank*, 10 Va. App. 1, 4, 389 S.E.2d 723, 724 (1990).

> With regard to how the court shall fashion an award of spousal support, the law's aim is to provide a sum for such period of time as needed to maintain the spouse in the manner to which the spouse was accustomed during the marriage, balanced against the other spouse's ability to pay.

*Id*. (citation omitted). In determining the appropriateness and amount of a lump sum award, trial courts must consider, in conjunction with those facts specified in Code § 20-107.1, the recipient spouse's need for such an award.

■ "Generally, when courts do make lump sum spousal support awards they do so because of special circumstances or compelling reasons," such as a payor spouse's future unwillingness or potential inability to pay periodic payments, or a payee spouse's immediate need for a lump sum to maintain herself or himself or satisfy debts. *Blank*, 10 Va. App. at 5, 389 S.E.2d at 725. Moreover, unlike periodic spousal support payments which are subject to modification upon a future change in circumstances, a lump sum award is a fixed obligation to pay a sum certain when the decree is entered whether payable immediately or in deferred installments. "Thus, the right to the amount, whether payable immediately or in installments is fixed and vested at the time of the final decree and the amount is unalterable by [the trial] court order, remarriage, or death." *Mallery-Sayre v. Mallery*, 6 Va. App. 471, 475, 370 S.E.2d 113, 115 (1988). It necessarily follows that where the right of the recipient spouse to the amount of the lump sum is fixed and vested, the obligation of the payor spouse is also fixed and such spouse may not be relieved of it upon a change in circumstances or by the remarriage or death of the recipient spouse. Consequently, a court's selection of the method of award-

ing spousal support has considerable significance beyond the mere amount of the award. It is in this context that we find error in the court's award of a lump sum spousal support to Mrs. Kaufman.

Pursuant to the trial court's amended final decree, Mrs. Kaufman was awarded essentially the entire marital home and everything within it. Therefore, she did not need a lump sum of money to acquire a place to live. In light of the trial court's finding that she was unable to engage in compensable work due to the facts that she possessed a degree in English but lacked a teaching certificate and was charged with the custody and care of the parties' child, Mrs. Kaufman was awarded $730 per month in child support and $2,796.85 per month in periodic spousal support. Thus, the trial court has provided for her and the child's continuing daily needs. Consequently, Mrs. Kaufman does not need a lump sum award to establish a business or pay for additional education in order to support herself. The record does not indicate Mrs. Kaufman needs a lump sum award to satisfy any outstanding debts, nor does the record indicate Dr. Kaufman is or is likely to be unwilling or unable to pay periodic spousal support. In summary, on this record there are no special circumstances or compelling reasons for Mrs. Kaufman to receive a lump sum award in addition to receiving periodic spousal support. Accordingly, while we express no opinion on the total amount of spousal support awarded to Mrs. Kaufman, we find the trial court erred in awarding her a portion of that amount in the form of a lump sum.

■ Dr. Kaufman further argues the trial court abused its discretion in its equitable distribution of the parties' non-pension marital property. He claims the record in this case does not justify a disproportionately larger award to Mrs. Kaufman. "[U]nless it appears from the record that the trial judge has abused his discretion, that he has not considered or has misapplied one of the statutory mandates, or that the evidence fails to support the findings of fact underlying his resolution of the conflict in the equities, the equitable distribution award will not be reversed on appeal." *Blank*, 10 Va. App. at 9, 389 S.E.2d at 727; *see Robinette v. Robinette*, 10 Va. App. 480, 486, 393 S.E.2d 629, 633 (1990); *Smoot v. Smoot*, 233 Va. 435, 443, 357 S.E.2d 728, 732 (1987). Thus, a trial court has broad discretion in determining the equitable distribution of the marital property so long as the court uses

the guidelines set forth in Code § 20-107.3 and the evidence supports the court's decision. *See Keyser v. Keyser*, 7 Va. App. 405, 412, 374 S.E.2d 698, 702 (1988); *Seehorn v. Seehorn*, 7 Va. App. 375, 384, 375 S.E.2d 7, 12 (1988).

In Virginia, there is no presumption favoring equal division of marital property. *E.g.*, *Robinette*, 10 Va. App. at 486, 393 S.E.2d at 633. Instead, Code § 20-107.3 provides for the equitable division of the marital property based upon the equities and the parties' rights and interests in the property. *Kaufman*, 7 Va. App. at 497, 375 S.E.2d at 379; *Robinette v. Robinette*, 4 Va. App. 123, 129, 354 S.E.2d 808, 811 (1987). Consequently, the weight we place on the percentage of marital property awarded to a party is purely relative and significant only with regard to the case before us.

Pursuant to our order in *Kaufman*, the trial court was directed to redetermine the equitable distribution in accordance with Code § 20-107.3 after reconsidering the marital properties and their values. 7 Va. App. at 498, 375 S.E.2d at 379. In its amended final decree, the trial court expressly indicated that equitable distribution was made in consideration of Code § 20-107.3, which allows the court to consider the parties' monetary and non-monetary contributions to the marriage and the marital property, the parties' physical and mental health, the circumstances surrounding the dissolution of the marriage, and other factors relative to a fair and equitable distribution of the marital property. *See* Code § 20-107.3(E). Here, the record shows that while Dr. Kaufman was the main monetary contributor to the marriage and the acquisition of marital property, Mrs. Kaufman made substantial non-monetary contributions through her role as housekeeper and mother. Mrs. Kaufman also suffered various physical and mental problems during the marriage that continued into the separation. Finally, Dr. Kaufman was found to have willfully deserted and abandoned Mrs. Kaufman. In light of these facts, we find that the trial court did not abuse its discretion in determining that Mrs. Kaufman should receive a larger share of the non-pension marital property than Dr. Kaufman.

However, Dr. Kaufman's complaint that the trial court erred by changing the valuation of his interest in Pulmonary from negative $8,051 to one with no value is another matter. Dr. Kaufman argues that since in *Kaufman*, 7 Va. App. at 502, 375 S.E.2d at

381, we stated "we are bound by the trial court's judgment concerning husband's interest in Pulmonary," we thereby affirmed the trial court's initial finding regarding the valuation of Pulmonary and, therefore, the trial court was barred from changing that valuation based on the "law of the case" doctrine and *res judicata*. Mrs. Kaufman argues the trial court was authorized to revalue this interest in Pulmonary since, on remand, we directed the trial court to reconsider the properties and their values when refashioning the equitable distribution of the marital property in its amended final decree. *Id.* at 498, 375 S.E.2d at 379. Mrs. Kaufman misinterprets our instructions for the trial court on remand. Rather than directing the trial court to redetermine or adjust the values of the marital properties, we simply directed the court to reconsider the properties and their values, and then to determine the amount of the monetary award. In other words, we directed the trial court to return to its findings regarding the values of the marital properties, to reconsider the equities of the parties in this property, and then to equitably distribute the marital properties. The trial court's change of the value of this particular property increased the pool of marital wealth in the amount of $8,051. Hence, we turn to the "law of the case" doctrine to decide whether the trial court was barred from redetermining the value of Dr. Kaufman's interest in Pulmonary.

First, we note that the "law of the case" doctrine is similar but not identical to *res judicata*. The Virginia Supreme Court explained in *Steinman v. Clinchfield Coal Corp.*, 121 Va. 611, 93 S.E. 684 (1917):

> The [law of the case] doctrine, briefly stated, is this: Where there have been two appeals in the case, between the same parties, and the facts are the same, nothing decided on the first appeal can be re-examined on a second appeal. Right or wrong, it is binding on both the trial court and the appellate court, and is not subject to re-examination by either. For the purpose of that case, though only for that case, the decision on the first appeal is law. It differs from *res judicata* in that the conclusiveness of the first judgment is not dependent upon its finality. The first judgment is generally, if not universally, not final. The reason for the rule is twofold. First, after the rehearing period has passed, the appellate court has no power to change its judgment and the mandate for retrial

removes the case from its jurisdiction. Second, it is necessary to the orderly and efficient administration of justice. It would greatly increase the labor of appellate courts and the costs to litigants if questions once considered and determined could be reopened on any subsequent appeal. . . . The rule also applies where the question raised on the second appeal was necessarily involved in the first appeal, whether actually adjudicated or not.

*Id.* at 621-22, 93 S.E. at 687; *accord Chappell v. White*, 184 Va. 810, 816, 36 S.E.2d 524, 526-27 (1946). Thus, "it is not competent for this court to review one of its own decrees rendered at a previous term, even though error therein be apparent." *Turner v. Staples*, 86 Va. 300, 302, 9 S.E. 1123, 1124 (1889). The valuation of Pulmonary was an issue directly before this Court in the first appeal of this case. We specifically upheld the trial court's judgment concerning Dr. Kaufman's interest in Pulmonary. Therefore, the trial court could not properly redetermine the value of Dr. Kaufman's interest in Pulmonary and we are prevented from reviewing our previous decree.

Mrs. Kaufman argues for purposes of equitable distribution, however, that Pulmonary has no value since it is encumbered with indebtedness that exceeds its value. *Hodges v. Hodges*, 2 Va. App. 508, 515, 347 S.E.2d 134, 138 (1986). She correctly notes our holdings that marital property encumbered with indebtedness which equals or exceeds its value should be considered worthless for the purposes of equitable distribution, unless there is evidence the indebtedness was incurred to frustrate the provisions of Code § 20-107.3. *See Trivett v. Trivett*, 7 Va. App. 148, 152-53, 371 S.E.2d 560, 562-63 (1988). However, she is unable to rely on this argument since the issue of the valuation of Pulmonary was not remanded in *Kaufman* and, therefore, the trial court's initial determination that Pulmonary has a negative value, rather than no value, must stand based on the "law of the case" doctrine.[1] Thus, we find the trial court improperly changed the valuation of Pulmonary from negative $8,051 to one of no value. Since it is unclear whether the trial court would have distributed the marital property in the same fashion had Pulmonary continued to be valued

---

[1] Mrs. Kaufman did not argue the law in *Hodges* or *Trivett* in the first appeal. Therefore, we never addressed that issue and the trial court's judgment that Pulmonary had a negative value for equitable distribution purposes was permitted to stand.

negatively, we direct the trial court to reconsider the marital properties and their values as initially determined, and fashion the equitable distribution of the non-pension marital property.

Lastly, Dr. Kaufman argues the trial court erred by requiring him to pay interest on Mrs. Kaufman's share of his pension plans from the date of the evidentiary hearing until she receives her share. First, Dr. Kaufman argues the trial court was barred from redetermining the equitable distribution of his pensions since in the initial appeal we did not expressly overrule the trial court's decision to award Mrs. Kaufman $14,780, which represents fifty percent of the present value of the pensions. We reject this argument because Dr. Kaufman fails to recognize our order that the trial court redetermine the equitable distribution of the marital property, which includes Dr. Kaufman's pensions.

In the alternative, Dr. Kaufman argues our decisions in *Pledger v. Pledger*, 6 Va. App. 627, 371 S.E.2d 43 (1988), and *McLaughlin v. McLaughlin*, 2 Va. App. 463, 346 S.E.2d 535 (1986), prevent the trial court from awarding interest on Mrs. Kaufman's share of his pensions. In response, Mrs. Kaufman contends our decision in *Zipf v. Zipf*, 8 Va. App. 387, 382 S.E.2d 263 (1989), allows such an award. In both *Pledger* and *McLaughlin*, we addressed the issue of whether trial courts may require a payor spouse to pay interest on an award from a pension that is not then being paid. In *McLaughlin*, the wife complained her award representing her share of her husband's pension was flawed since the periodic payments would be made without interest on the unpaid balance of the award. We rejected her complaint after noting that, "[b]ecause the monetary award was based on benefits to be received as a pension, such payments would not be due until the payments were received." 2 Va. App. at 472, 346 S.E.2d at 539. Thus, we stated "[i]t would be illogical to require interest on sums before they become due." *Id*. Similarly, we reversed a decree in *Pledger* that awarded the wife a fixed sum of her husband's pension, which was not due to be paid until some future date, "plus interest thereon at the judgment rate, until paid . . . ." 6 Va. App. at 629, 371 S.E.2d at 44. After observing that "no money was due until the husband either retired or received a lump sum payment," we held the wife was not entitled to interest on the award since the husband's benefits were not due. *Id*. at 632, 371 S.E.2d at 45.

In *Zipf*, the wife contested her award of a sum certain ($70,000) of her husband's military pension without adjustment to compensate for delayed receipt of that sum in the form of periodic payments. The trial court awarded her twenty-five percent of her husband's military pension, which had a present value of $280,000. The pension was entirely earned during the parties' marriage and the husband was receiving pension benefits at the time of their divorce. Based on those facts, we held "that once the trial judge determined that [the wife] was entitled to twenty five percent of the pension as her marital share, the trial judge erred by fixing that entitlement at a sum certain of $70,000 (by multiplying the present value of the pension by twenty-five percent)." *Zipf*, 8 Va. App. at 396, 382 S.E.2d at 268. We explained that when "the present value of the pension is used to fix a spouse's marital share entitlement as a sum certain even though the payment to the spouse is deferred, the trial judge must also award as a part of that fixed sum certain amounts necessary to compensate the spouse for the additional discounting that results" and, further, "the record must contain evidence to support the calculation and to establish that an additional discounting has not resulted." *Id.* at 398, 382 S.E.2d at 269. However, we held that even though our holdings in *McLaughlin* and *Pledger* were still valid, they did not preclude such considerations and calculations by trial courts. *Id.*

More recently, in *Steinberg v. Steinberg*, 11 Va. App. 323, 398 S.E.2d 507 (1990), the wife challenged the trial court's award to her of a sum certain of her husband's pension rather than directing that she receive a percentage of each payment of the pension as he received it. The parties stipulated that for equitable distribution purposes the pension plan was worth $142,653.76 at the time of their separation. However, the parties proffered no evidence concerning the pension plan, such as how or when the husband would receive his benefits, or whether the entire pension was earned during the marriage. Thus, we held "[u]nder the circumstances of [that] case," the wife did not have "a right to receive a portion of the fund during the life of the pension." *Id.* at 327, 398 S.E.2d at 509. Further, we held the trial court properly awarded her forty-five percent of the stipulated value of the pension and reaffirmed our decisions in *McLaughlin*, *Pledger*, and *Zipf*.

In the present case, Mrs. Kaufman was awarded $14,780, an amount equal to fifty percent of the present value of Dr. Kaufman's pension plans, plus eight percent annual interest from August 9, 1984. Clearly, this award is in conflict with our holdings in *Pledger* and *McLaughlin* since interest is awarded on Mrs. Kaufman's share of Dr. Kaufman's benefits, which are not yet due. The facts of this case are easily distinguishable from those in *Zipf* since Dr. Kaufman's entire pension was not earned during the parties' marriage and Dr. Kaufman is not presently receiving benefits. Also, regardless of whether Mrs. Kaufman's "present value" award of $14,780 is based on considerations or calculations that discount for the effect of the deferment of her payments, our holding in *Zipf* still does not allow the trial court to require Dr. Kaufman to pay interest on her share of his pensions. Rather, it requires the trial court to discount for the deferment of her payments if and when it determines the amount of her sum certain award. Therefore, we hold the trial court erred by requiring Dr. Kaufman to pay interest on Mrs. Kaufman's share of his pensions.

In summary, we hold the trial court erred by awarding Mrs. Kaufman both periodic and lump sum spousal support, by changing the valuation of Pulmonary from negative $8,051 to one of no value, and by awarding interest on Mrs. Kaufman's share of Dr. Kaufman's pension. We also hold the trial court did not abuse its discretion in determining that Mrs. Kaufman should receive a larger share of the non-pension marital property than Dr. Kaufman. Accordingly, we remand the case for the trial court to redetermine appropriate periodic spousal support for Mrs. Kaufman and equitable distribution of the marital property based on the factual findings established upon the first appeal and consistent with our present holdings.

*Affirmed in part, reversed in part, and remanded.*

Barrow, J., and Keenan, J.,* concurred.

.

---

* Justice Keenan participated in the hearing and decision of this case prior to her investiture as a Justice of the Supreme Court of Virginia.