COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Moon, Judge Bray and Senior Judge Duff
Argued at Alexandria, Virginia


JENNIFER LYNN BARTLETT

v.   Record No.  2639-95-4

ANTHONY DEAN RENNIER

MEMORANDUM OPINION[*] BY
CHIEF JUDGE NORMAN K. MOON
JULY 16, 1996


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
J. Howe Brown, Judge

Sharon Gregory Jacobs (Morchower, Luxton and
Whaley, on briefs), for appellant.

Melinda S. Norton (Marcia F. Ruff; Shoun &
Bach, P.C., on brief), for appellee.


Jennifer Lynn Bartlett appeals the final decree of divorce from Anthony Dean Rennier.  Ms. Bartlett objects to the decree insofar as it awards 100 percent of a business established during the marriage to Mr. Rennier, awards lump sum spousal support with no reservation of the right to petition for periodic support, and fails to apportion marital debt.  We affirm in part, reverse in part, and remand the case to the trial court.

The parties were married on June 23, 1990.  Ms. Bartlett was twenty-six years old at the time of trial, and has a bachelor's degree in physics.  Mr. Rennier was thirty-four and has bachelor's and master's degrees in electrical engineering.  The trial court found that theirs was "a short, not very happy, and somewhat unusual marriage."  Ms. Bartlett had experienced

---

[*]Pursuant to Code § 17-116.010 this opinion is not designated for publication.

emotional difficulties since childhood, and these contributed to the problems in the marriage. The parties separated on June 14, 1993.

When the parties were married, Mr. Rennier was employed by The Analytic Sciences Corporation (TASC) and earning approximately $59,500 per year. Ms. Bartlett had just graduated from college. Shortly after the marriage, she formed Elephant Information Services (EIS), which managed lists of Republican voters in Arlington County. Mr. Rennier encouraged Ms. Bartlett in this venture and provided technical assistance. Despite this assistance and her own hard work, Ms. Bartlett received no income from EIS during the marriage, and the company is now defunct.

In the spring of 1992, Mr. Rennier and two of his colleagues established Blacksmith, a computer software development company. Creation of the company was made possible by a $100,000 investment by Ms. Bartlett's father, who is an attorney. Mr. Rennier had sought other investors but found none. Ms. Bartlett's father was willing to invest in the venture with no requirement of a business plan. He testified that he intended to benefit his daughter by making the investment, that he "probably" would not have invested in the company had family not been involved, and that the risk in the investment was "non-trivial." He also testified that the investment was a good one and that he was "in it for the long haul."

Mr. Bartlett received Blacksmith stock in return for his investment. He advanced a $2,000 retainer for legal services,

which was returned to him in the form of additional stock. He is corporate counsel for Blacksmith, and has been "very gentle" in billing for his services.

During the marriage, Mr. Rennier drew a $30,000 salary from Blacksmith, $29,500 less than he had earned at TASC. Despite this loss of income, Ms. Bartlett encouraged her husband in the new undertaking and participated in the discussions with her father that culminated in the $100,000 investment. She also provided limited assistance in forming the business and getting it off the ground. She served as corporate secretary, which involved ministerial tasks such as signing the corporate minutes. She obtained the home occupancy permit and the business license, edited written materials about the company, and provided administrative support such as purchase of supplies. She was not involved in product development or other substantive aspects of the business.

By January 1993, it was apparent that EIS would not be financially productive. Ms. Bartlett took a job as a legislative aide in Richmond for the 1993 session. She testified that her goal in taking the position was to provide income for the family and to assist her in finding another position. She returned from Richmond in February, and took a part-time position with the Northern Virginia Planning Commission in April.

The parties' first marital residence was a townhouse owned by Mr. Rennier prior to the marriage. The parties lived there over a year, and then purchased a home in Arlington. They made a

$50,000 down payment, contributed by Ms. Bartlett's parents, and financed $184,000. Ms. Bartlett's parents shared ownership of the home as tenants in common with Ms. Bartlett and Mr. Rennier. Mr. Bartlett understood that any loss or profit realized through sale of the home would be shared in proportion to the money contributed. However, Mr. Rennier testified that in the event of a loss, he and Ms. Bartlett would reimburse the $50,000 down payment first.

The parties realized a $36,000 profit on sale of the townhouse. They placed $30,000 of this amount into a joint account along with $17,000 of Ms. Bartlett's savings. After separation, Mr. Rennier withdrew $30,000 of the approximately $37,000 remaining in this account. He then paid Ms. Bartlett $8,000 of the amount he withdrew, leaving him with $22,000. The court found the account to have been marital property.

After separation, Mr. Rennier paid the mortgage on the marital residence for two months. Ms. Bartlett and her father then refinanced the house to secure a lower monthly payment. Ms. Bartlett paid the refinancing costs. During this process, Mr. Rennier's name was removed from the mortgage. The house is being rented, but the monthly payment does not cover the mortgage and Ms. Bartlett pays the deficiency, as well as the cost of maintaining the property. The parties stipulated that the listing price of the marital residence at the time of the hearing was $231,000. The parties purchased the home for $230,000. The parties agree that the housing market in Arlington is slow at

present.

Ms. Bartlett is now living in Amherst, Virginia and is employed full-time as a legislative aide at a salary of approximately $24,000. Mr. Rennier earned $48,000 in 1994, and was going to earn more than $50,000 in 1995.

## EQUITABLE DISTRIBUTION

"[A] trial court has broad discretion in determining the equitable distribution of the marital property so long as it uses the guidelines set forth in Code § 20-107.3 and the evidence supports the court's decision." Kaufman v. Kaufman, 12 Va. App. 1200, 1206-07, 409 S.E.2d 1, 5 (1991). Where one or more of the statutory factors cannot be reconciled with the award or where the award is inexplicable on the facts, this constitutes an abuse of discretion. See Donnell v. Donnell, 20 Va. App. 37, 42, 455 S.E.2d 256, 258 (1995); Trivett v. Trivett, 7 Va. App. 148, 153-54, 371 S.E.2d 560, 563 (1988). The award must not be arbitrary or punitive. O'Loughlin v. O'Loughlin, 20 Va. App. 522, 528, 458 S.E.2d 323, 326 (1995).

The primary assets to be considered for equitable distribution were the marital home, Blacksmith, EIS, the funds from the joint account, Mr. Rennier's IRA of approximately $17,000, and household furnishings. The trial court ordered Mr. Rennier to transfer his interest in the marital home to Ms. Bartlett and her parents. The court allowed Ms. Bartlett to retain the household furnishings already in her possession as well as the $8,000 Mr. Rennier returned to her from the joint

account.  The court ordered that both parties retain ownership of their respective businesses.  Ms. Bartlett received no interest in the IRA.

Blacksmith was by far the most valuable marital asset.  The parties stipulated that Blacksmith was worth $900,000 at the time of the hearing.  Mr. Rennier's share was worth $300,000.  The company had cash assets of $262,000 and $353,000 in accounts receivable, against a liability of only $74,000.  Ms. Bartlett's expert testified that the company was in strong financial health.

The court awarded Ms. Bartlett no share in Blacksmith.  In support of its decision, the court stated that "[w]ife's claim that she contributed to the success of the business is unconvincing, at best."  The court also found that in order to raise cash from the business, Mr. Rennier would have to offer his shares to the other owners, and that he could not sell his business "without losing that way of earning his living."  The court also found that Mr. Rennier had made greater monetary and nonmonetary contributions to the well-being of the family.

As discussed above, Ms. Bartlett's contributions to start-up and operation of Blacksmith were limited.  Nevertheless, they were positive rather than negative.  Further, in evaluating the parties' relative contributions to this marital asset, the trial court disregarded Ms. Bartlett's support for the risky endeavor of starting a business and the connection between that support and her father's, Mr. Bartlett's, investment.

First, Ms. Bartlett supported her husband in his taking

nearly a fifty percent reduction in salary in order to start the business (from $59,500 to $30,000). Second, Ms. Bartlett's father decided to invest $100,000 in the business--which was still in the early planning stages--based on discussions with his daughter and son-in-law. He listened to "the vision that the children had" about forming a software company. His decision to invest was based on the couple's mutual enthusiasm for the project, and he intended the investment to benefit his daughter. Other investors had been sought; none were found. The investment was risky. Had Ms. Bartlett not supported her husband's undertaking, Blacksmith would likely not exist at all.

The record does not support that the lack of liquidity of Blacksmith was sufficient to deny an award based upon its value. The trial court apparently did not consider that a monetary award may be ordered paid in installments. See Mallery-Sayre v. Mallery, 6 Va. App. 471, 474-75, 370 S.E.2d 113, 115 (1988); Ray v. Ray, 4 Va. App. 509, 513, 358 S.E.2d 754, 756 (1987).

The trial court found that both parties made a "valiant effort" to get the failed EIS business going. The trial court awarded both EIS and the marital home to Ms. Bartlett. EIS is defunct and has no value. At present the home has no value to Ms. Bartlett either, and indeed is a liability. The rent received on the home does not cover the mortgage payments. The home has not appreciated in value since it was acquired, and even if Ms. Bartlett could sell it, any small profit would go to her

parents.

In effect, the trial court awarded Mr. Rennier 100 percent of the only marital asset of significant value, the Blacksmith interest.

The court also concluded that Ms. Bartlett was in better financial condition after the marriage than before. The record does not support such a finding. She had $17,000 cash when she married and ended up with $8,000 of it. She ended up with furniture of between $5,000 and $10,000 in value, but also had attorneys' fees to pay. She was awarded a worthless business and a rental dwelling that was not worth the debt against it and had a negative cash flow inadequate to pay its mortgage.

Here we find that the awards to husband and wife were so disproportionate that the court's failure to award the wife any portion of the value of the computer business constituted an abuse of discretion. See Donnell, 20 Va. App. at 42-43, 455 S.E.2d at 258; Blank v. Blank, 10 Va. App. 1, 9, 389 S.E.2d 723, 727 (1990). The trial court should reconsider the award in light of the fact that this marriage was a partnership between the two parties. Although it was proper to give the husband credit for having been more successful in his business, Aster v. Gross, 7 Va. App. 1, 7-8, 371 S.E.2d 833, 837 (1988), it was plainly wrong to find that the wife was entitled to nothing. Here both parties pursued business interests with the approval and support of the other. In any partnership there are generally some successes and some failures. It does not follow that the partner who is more

successful obtains all the profits, leaving nothing to the partner who worked at an unsuccessful part of the endeavor.

It is of some significance that the interest in Blacksmith was 100 percent the result of marital effort. It was not an asset brought to the marriage that merely transmuted into marital property. It was created by the sacrifices of both parties in current marital income, albeit the husband's, for the future benefit of the marriage.

The trial judge should reconsider the equitable award giving weight to the wife's efforts to contribute to the marital partnership as opposed to focusing on what she did not contribute that she claimed to have contributed. The court should consider whether she did for the marital partnership the best she could under the circumstances and not punish her for what she may not have achieved, unless the failure was willful or because of dereliction, which the record does not support. Furthermore, the court should consider whether the ability to order an award payable in installments overcomes problems of lack of liquidity of Mr. Rennier's interest in Blacksmith.

SPOUSAL SUPPORT

On remand for reconsideration of equitable distribution, the trial court must reconsider the spousal award as well. See Code § 20-107.1(8); Mitchell v. Mitchell, 4 Va. App. 113, 121, 355 S.E.2d 18, 23 (1987). To assist the trial court in its reconsideration of this issue, we address the issue of lump sum support.

"Although Code § 20-107.3 grants the trial court discretion in deciding whether to award either periodic or lump sum payments, periodic payments are the preferred form."  Mosley v. Mosley, 19 Va. App. 192, 197, 450 S.E.2d 161, 164 (1994). "Generally, when courts do make lump sum spousal support awards they do so because of special circumstances or compelling reasons, and appellate courts uphold such awards where the record clearly reflects the court's rationale for finding that the award will adequately provide for contingencies."  Blank, 10 Va. App. at 5, 389 S.E.2d at 725.  Compelling reasons for making a lump sum award include the payee spouse's immediate need for a lump sum to maintain herself or himself or to satisfy debts.  Kaufman, 12 Va. App. at 1205, 409 S.E.2d at 4.

Ms. Bartlett has obtained full-time employment.  Although she claims that her expenses exceed her income, she has managed to save money since the separation.  She is young and in good physical health, and the marriage was of short duration.  The trial court awarded support based on Ms. Bartlett's desire to pursue a graduate degree--plans she claims to have put on hold when Mr. Rennier formed Blacksmith.  This is the type of circumstance that the court may properly take into account in deciding to award lump sum support.

The trial court did not reserve for Ms. Bartlett the right to petition for periodic support.  The court is not required to reserve this right in every instance.  Poliquin v. Poliquin, 12 Va. App. 676, 681, 406 S.E.2d 401, 404 (1991); Blank, 10 Va. App.

- 10 -

at 6; 389 S.E.2d at 726.  Ordinarily, however, "a modest lump sum award should not defeat the right to petition for additional support in the event of changed circumstances."  Blank, 10 Va. App. at 4-5, 389 S.E.2d at 725.

In Poliquin, we reversed the trial court's failure to reserve the right to modify a lump sum award because the parties' future circumstances, including the wife's earning potential and the husband's depressed current earnings, were uncertain.  In reconsidering spousal support here, the trial judge should consider whether any uncertain elements require a reservation of the right to petition for periodic support.

### MARITAL DEBT

Ms. Bartlett argues that the trial court erred in failing to take marital debt into account, either directly by apportioning it, or indirectly by taking it into account as a factor in the equitable distribution.  The two debts she complains of are the mortgage on the marital home and $8,900 in counseling expenses incurred by Ms. Bartlett after separation.

When Ms. Bartlett and her father refinanced the marital home several months after the separation, they removed Mr. Rennier's name from the mortgage.  That marital debt was extinguished.  The counseling expenses were incurred after separation, and the trial court did not err in failing to apportion or otherwise take them into account.

For the foregoing reasons, the case is reversed in part, affirmed in part, and remanded to the trial court for

- 11 -

reconsideration of equitable distribution and spousal support.

                                    <u>Affirmed in part,</u>
                                    <u>reversed in part,</u>
                                    <u>and remanded.</u>

Bray, J., dissenting.

The majority decides that the trial court abused its discretion and was plainly wrong in awarding Ms. Bartlett no interest in Blacksmith. This conclusion is supported by an analysis of the marital estate and the evidence relevant to its equitable distribution which differs from the rationale adopted by the trial court. Because I find the reasoning sound in either instance, I would affirm the decree.

In reviewing a disputed equitable distribution award, we have acknowledged that the "trial court's job is a difficult one" and requires reliance on the "discretion of the trial judge in weighing the many considerations and circumstances that are presented in each case." Artis v. Artis, 4 Va. App. 132, 137, 354 S.E.2d 812, 815 (1987). Thus, "'[u]nless it appears from the record that the chancellor has abused his discretion, . . . not considered or . . . misapplied [a] statutory mandate[], or that the evidence fails to support the findings of fact underlying his resolution of the conflict in the equities, the chancellor's equitable distribution award will not be reversed . . . .'" Robinette v. Robinette, 10 Va. App. 480, 486, 393 S.E.2d 629, 633 (1990) (citations omitted).

Here, I concur that the evidence supported a disposition of the marital interests in Blacksmith more favorable to Ms. Bartlett. However, I also find that the decision of the trial court is consistent with both the record and the law. I am, therefore, unable to conclude that the trial court was either

plainly wrong or abused its discretion and would affirm the decree. See Reece v. Reece, 22 Va. App. 368, 377, 470 S.E.2d 148, 153 (1996) (Baker, J. concurring).