COURT OF APPEALS OF VIRGINIA


Present:   Judges Benton, Bumgardner and Kelsey
Argued at Alexandria, Virginia


MICHAEL R. SCOTT

                                                    MEMORANDUM OPINION* BY
v.        Record No. 0815-04-4                      JUDGE D. ARTHUR KELSEY
                                                         DECEMBER 7, 2004
ELIZABETH G. SCOTT


                 FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                            Jonathan C. Thacher, Judge

             Michael R. Scott, *pro se*.

             Sean P. Kelly (Eva N. Juncker; Robert Lunger; Condo Roop Kelly &
             Byrnes, P.C., on brief), for appellee.


        In 2002, the trial court entered a final decree divorcing Michael R. Scott and Elizabeth G.

Scott.  Wife appealed, claiming error in various aspects of the equitable distribution award.  We

affirmed in part and reversed in part.  Scott v. Scott, No. 2804-02-4, 2004 Va. App. LEXIS 4

(Jan. 6, 2004) (Scott I).  The trial court on remand made additional findings, which husband now

appeals.  For the following reasons, we affirm the trial court's final judgment.

                                            I.

        "When reviewing a trial court's decision on appeal, we view the evidence in the light

most favorable to the prevailing party, granting it the benefit of any reasonable inferences."

Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 835 (2003).  The evidence in this

case comes from the trial court's original evidentiary hearing in 2002 and from the remand

hearing following the first appeal.

        _____

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

In 1978, Michael Scott purchased a condominium in San Diego, California, paying $17,000 down on a total purchase price of $85,000. In 1980, Mr. Scott refinanced the condo for $93,750 and took $23,361 out. In 1981, Michael and Elizabeth Scott married. They resided in the condo until 1983, when they moved to the East Coast. From 1983 to 1999, they leased the condo to tenants. Ms. Scott managed the property, determining the rent and maintaining the premises. She also dealt with tenants and the homeowners' association. In his testimony, Mr. Scott agreed that all rent payments "went to Libby, and it was part of her -- part of her monthly cash flow. She just collected it and deposited it in her account," which was used for marital purposes. Mr. Scott paid the mortgage from an account funded by his salary. "The mortgage payment for the condo," Mr. Scott conceded, "came out of the marital account."

The parties refinanced the condo in 1990, taking a little over $30,000 out to pay a number of marital debts. At that time, Ms. Scott signed as co-borrower on the promissory note and assumed joint-and-several liability for the debt. In 1997, they refinanced the condo yet again to obtain a lower interest rate. This time the condo, which had been titled solely in Mr. Scott's name, was retitled to "Michael R. Scott and Elizabeth G. Scott, Husband and Wife as Joint Tenants." Mr. Scott testified that this retitling was done solely as a requirement of the lender and that he did not intend it to be a gift to his wife. Ms. Scott, however, testified that the joint titling "wasn't a question. We owned it jointly." "I assumed I was on the title the whole time," she explained. The trial court accepted Mr. Scott's view and declared the condo to be his separate property.

The parties also presented conflicting testimony on a $22,609 tax refund received on their 2000 federal income tax return. Mr. and Ms. Scott testified that they initially agreed to roll $10,000 over toward their 2001 taxes, leaving approximately $12,000 that they would split. Mr. Scott, however, later determined he could not afford to do so and rolled over only "about $2,000 or $3,000." He claimed that he and his wife agreed to have the balance of the overpayment deposited

to his account so that he could use it to pay their son's college tuition and capital gains taxes they owed on the sale of marital property in Georgia. Ms. Scott denied any knowledge of this change in plans and asked the trial court to equitably distribute the entire refund amount. The trial court apparently overlooked this issue and failed to make any disposition.

Ms. Scott appealed and argued, among other things, that the trial court erred by declaring the condo Mr. Scott's separate property. We began our analysis by pointing out that the trial court mistakenly "concluded the condominium was 'simply separate property of the husband,' without making a finding that either the deed was not a deed of gift or husband had retraced the jointly titled property to separate property." Scott I, slip op. at 4, 2004 Va. App. LEXIS 4, at *6. We then held that *even if* Mr. Scott had no donative intent at the time the parties jointly titled the condo, he still failed to establish through tracing principles exactly what portion of the resulting hybrid property should be classified as separate. We explained the failure of proof this way:

> But, accepting for our analysis that the husband carried his burden of proof that the deed was not a gift, the burden remained on husband in order to establish that the condominium was his separate property to establish that all of the funds used to pay for and acquire the property during the marriage could be traced to his separate funds.

> \* \* \* \* \* \*

> Thus, the rental funds were not maintained in a separate and discrete fund from which we can say or the trial court could conclude that the purchase money mortgage was serviced exclusively from separate funds. Therefore, while husband may have adequately retraced the rental payments to accounts used to pay the mortgage payments, *the husband failed, as a matter of law, to retrace the funds as his separate property. Thus, the evidence failed to rebut the marital property presumption and the court erred in classifying the condominium as the husband's separate property.* Therefore, we reverse the trial court's classification of the San Diego condominium as separate property, and remand for the court to reclassify the property and to equitably distribute the value of the condominium according to the rights and equities of the parties. See Code § 20-107.3(A), Hart, 27 Va. App. at 65-66, 497 S.E.2d at 505, and Rahbaran v. Rahbaran, 26 Va. App. 195, 494 S.E.2d 135 (1997) (addressing hybrid property).

Scott I, slip op. at 4-5, 2004 Va. App. LEXIS 4, at *6-9 (emphasis added).

Ms. Scott also challenged the trial court's failure to rule on the 2000 tax refund issue. We agreed "the court did not address the issue and made no disposition of this marital asset." Id. slip op. at 6, 2004 Va. App. LEXIS 4, at *10. We directed the trial court, on remand, to address the issue and to determine the parties' respective rights to the refund.

Scott I concluded by holding Ms. Scott was entitled to reasonable attorney fees on appeal. We ordered the trial court to "determine that amount upon remand."

On remand, the trial court took additional testimony and argument from Mr. Scott. "That's all the evidence I have, Your Honor," he concluded. The court ruled against Mr. Scott, finding that the condo should be classified as wholly marital property and divided evenly between the parties. Regarding the tax refund, the court divided it equally after debiting the gross amount by $12,000 to take into account the tuition payment. Finally, the court awarded Ms. Scott half of her attorney fees on appeal because she "only prevailed on half of the issues."[1]

II.

In his *pro se* brief on appeal, Mr. Scott asserts nine separate questions presented. Seven of the nine deal with the condo. The remaining two address the tax refund and the award of attorney fees. We find no error in the trial court's decision on any of these issues.

A.    THE SAN DIEGO CONDO

The trial court's decision in classifying, valuing, and equitably distributing the San Diego condo involves matters within the sound discretion of the chancellor. We overturn decisions of this kind only on a "showing of an abuse of that discretion." Smith v. Smith, 43 Va. App. 279, 286, 597 S.E.2d 250, 254 (2004) (citations and internal quotation marks omitted).

---

[1] In Scott I, we rejected Ms. Scott's challenge to the trial court's calculation of spousal support and its decision to not award attorney fees incurred during the trial court proceedings.

We find no error in the trial court's final decision to classify the condo as wholly marital property. We reversed the trial court in the first appeal because "husband failed, as a matter of law, to retrace the funds as his separate property." Scott I, slip op. at 5, 2004 Va. App. LEXIS 4, at *8. We came to that conclusion because "the burden remained on husband in order to establish that the condominium was his separate property to establish that all of the funds used to pay for and acquire the property during the marriage could be traced to his separate funds." Id. slip op. at 4, 2004 Va. App. LEXIS 4, at *7.

On remand, the chancellor initially stated that no further evidence need be taken because, as we had stated in our opinion:

> All of the income from the condo became marital property. All of the payments to the condo the Court has ruled -- the Court of Appeals has ruled was marital property. It is not a Brandenburg issue. It is transmuted into marital property by the conduct of the parties, and that is the Court's ruling.

In response, Mr. Scott argued that our opinion could be interpreted to allow additional evidence on tracing so that he could attempt to demonstrate the hybrid nature of the property and to quantify his separate property component. Recognizing the possibility that Scott I gave him "all those options . . . all three options," the chancellor agreed to consider Mr. Scott's additional evidence and argument.[2] At the end of the hearing, however, the court ruled: "Having heard all the evidence and all the argument, I still remain where I was before." The court declared the condo wholly marital and ordered that it be divided equally.

---

[2] We acknowledge that the panel citations to Code § 20-107.3(A), dealing with all three property classifications (marital, hybrid, and separate), as well as Hart v. Hart, 27 Va. App. 46, 65-66, 497 S.E.2d 496, 505 (1998), and Rahbaran v. Rahbaran, 26 Va. App. 195, 205, 494 S.E.2d 135, 139 (1997), two hybrid property opinions, created some ambiguity regarding the scope of the remand.

We need not determine the exact contours of the law-of-the-case doctrine as it applies to this case.[3] Even if our remand order authorized the trial court to take additional evidence on retracing, Mr. Scott's evidence *in toto* failed to persuade the factfinder. At the original equitable distribution trial in 2000 and the remand hearing in 2004, the chancellor heard extensive evidence of the financial circumstances of the condo — its purchase price, the circumstances of various refinancings, its retitling as joint property, Ms. Scott's assumption of joint and several liability, as well as the condo's income and expense cash flow.[4]

As a factfinder, the chancellor was well within his decisionmaking discretion to find Mr. Scott's evidence of retracing unpersuasive. Mr. Scott's original downpayment with separate

---

[3] Under the law-of-the-case doctrine, a party is not "entitled to relitigate unappealed issues on remand." Lockheed Info. Mgmt. Sys. Co. v. Maximus, Inc., 259 Va. 92, 108, 524 S.E.2d 420, 429 (2000). "Where there have been two appeals in the case, between the same parties, and the facts are the same, nothing decided on the first appeal can be re-examined on a second appeal. Right or wrong, it is binding on both the trial court and the appellate court, and is not subject to re-examination by either." Kaufman v. Kaufman, 12 Va. App. 1200, 1208, 409 S.E.2d 1, 6 (1991) (citations omitted). This rule has long applied "where the question raised on the second appeal was necessarily involved in the first appeal, whether actually adjudicated or not." Searles' Adm'r v. Gordon's Adm'r, 156 Va. 289, 296, 157 S.E. 759, 761 (1931) (quoting Steinman v. Clinchfield Coal Corp., 121 Va. 611, 620, 93 S.E. 684, 687 (1917)); Kaufman, 12 Va. App. at 1208, 409 S.E.2d at 6.

[4] During the remand hearing, Mr. Scott sought to introduce into evidence "official copies from the San Diego Assessor's office" that he suggested would show the amount of the condo's appreciation during the relevant time period. The trial court refused to admit the tax assessor documents. Mr. Scott did not proffer the excluded documents at trial, and thus, waived any appellate challenge on this issue. See Gamache v. Allen, 268 Va. 222, 230, 601 S.E.2d 598, 603 (2004); Smith v. Hylton, 14 Va. App. 354, 357-58, 416 S.E.2d 712, 715 (1992); Klein v. Klein, 11 Va. App. 155, 160, 396 S.E.2d 866, 868 (1990). Mr. Scott also presented other documents, some of which the trial court admitted, that do not appear in the trial court record submitted to us in this appeal. We thus do not consider them. See Lawrence v. Nelson, 200 Va. 597, 598-99, 106 S.E.2d 618, 620 (1959) ("An appellant who seeks the reversal of a decree on the ground that it is contrary to the law and the evidence has the primary responsibility of presenting to this court, as a part of the printed record, the evidence introduced in the lower court, or so much thereof as is necessary and sufficient for us to give full consideration to the assignment of error."); Oliver v. Commonwealth, 35 Va. App. 286, 297, 544 S.E.2d 870, 875 (2001) ("The trial court had those records in its files and took judicial notice of them at trial, without objection. Those records, however, were not made a part of the record before us.").

funds could not be easily saved from the dissipating effect of the various refinancings. The market value of the condo (at least at the time of the refinancings) could not be determined with any confidence. Mr. Scott's explanation, which focused on then-prevailing loan-to-value practices of lenders, was a sensible one — but not of such convincing clarity that the chancellor, as factfinder, had no choice but to accept it. We thus hold that the chancellor did not abuse his discretion in classifying the condo as wholly marital property and in rejecting Mr. Scott's effort at establishing a separate property component through retracing principles.

Mr. Scott also claims the trial court erred in ordering a reappraisal of the condo, rather than relying on the $280,000 value stipulated at the 2002 equitable distribution trial. We discern no error in the trial court's decision on this issue. See Holden v. Holden, 35 Va. App. 315, 324, 544 S.E.2d 884, 888 (2001) (holding that "re-valuation on remand is necessary 'to obtain the most accurate valuation and equitable distribution'" (citations omitted)); Wagner v. Wagner, 16 Va. App. 529, 531, 431 S.E.2d 77, 78 (1993) (*en banc*).[5]

## B. Division Of The 2000 Tax Refund

In Scott I, we directed the trial court to address the unresolved dispute concerning the parties' 2000 tax refund. On remand, the trial court divided the refund evenly between Mr. and Ms. Scott after debiting the tuition payment from the gross figure. Mr. Scott argues on appeal that, pursuant to an "agreement of the parties," he was entitled to the entire refund. No written contract substantiated the alleged agreement. Ms. Scott denied it. With the evidence in equipoise and the burden of proof on Mr. Scott, see Valjar, Inc. v. Maritime Terminals, Inc., 220

---

[5] We find no basis whatsoever in the record for Mr. Scott's assertion on brief that the trial court "tended to ignore all of Husband's evidence" and "issued its ruling" before giving him a chance to present his side of the case. We view as similarly meritless Mr. Scott's allegation that Ms. Scott's counsel "repeatedly tried to stampede the trial court into a ruling ignoring Husband's evidence on retracing his separate contribution to the San Diego property."

Va. 1015, 1018, 265 S.E.2d 734, 736 (1980), the trial court did not err in refusing to enforce the putative agreement.

## C. ATTORNEY FEE AWARD

In Scott I, we directed the trial court to award attorney fees related to her appeal. On remand, the court awarded Ms. Scott half of her fees on the ground that she prevailed, roughly speaking, on half of the issues. In the present appeal, Mr. Scott claims the award should be vacated because he received the fee petition for the first time at the remand hearing and that, upon later examination, he concluded that the fee request included excessive and improper billing entries. Mr. Scott also asserts on appeal a broad-based *ad hominem* against Ms. Scott's counsel and claims they should be precluded from recovering any fees.

Mr. Scott failed to raise these arguments in the trial court, and thus, cannot do so for the first time on appeal. Newsome v. Newsome, 18 Va. App. 22, 25, 441 S.E.2d 346, 348 (1994) (applying Rule 5A:18 procedural bar to attorney fee award). Because Mr. Scott does not assert the ends-of-justice exception to Rule 5A:18's procedural bar, we likewise do not address its applicability to this case. See Widdifield v. Commonwealth, 43 Va. App. 559, 564, 600 S.E.2d 159, 162 (2004) (*en banc*) (holding that exception to Rule 5A:18 should not be raised *sua sponte*).

## III.

In sum, we find no error in the trial court's decision to classify the San Diego condo as wholly marital property and to distribute it evenly between the parties. We likewise find no

abuse of discretion in the trial court's distribution of the 2000 tax refund or its award of attorney

fees to Ms. Scott.  For these reasons, we affirm.[6]

Affirmed.

---

[6] In addition, we (i) deny Ms. Scott's request for attorney fees incurred during this appeal, (ii) deny Mr. Scott's request for fees and costs incurred during this appeal, (iii) grant Ms. Scott's motion to strike to the extent Mr. Scott relies on attachments to his appellate briefs that are not part of the trial court record, (iv) deny Ms. Scott's motion for sanctions pursuant to Rule 5A:26 and Code § 8.01-271.1, and (v) deny Mr. Scott's motion for sanctions under Code § 8.01-271.1.