**Alexandria**

MARION K. ZIPF

v.

OTTO A. ZIPF

No. 1114-87-4

Decided July 11, 1989

▮▮▮▮▮▮▮

COUNSEL

William F. Krebs (Stephenson & Balthrop, LTD., on briefs), for appellant.

Gwendolyn C. Harkness for appellee.

OPINION

**BENTON, J.**—On this appeal from a decree entered in a divorce proceeding, Marion K. Zipf contends that the trial judge erred in: (1) selecting as the valuation date of marital property the date of filing of the bill of complaint instead of a date as near as practical to the evidentiary hearing; (2) awarding her twenty-five percent of the value of the husband's military pension and twenty-five percent of the value of stock titled in the husband's name; (3) fixing as a sum certain the value of her share of the husband's pension without adjustment to compensate for delayed receipt of that sum in the form of periodic payments; and (4) requiring her to exhaust her share of the marital property before awarding more than nominal spousal support. For the reasons which follow, we affirm in part the trial judge's decision, reverse in part, and remand for further proceedings consistent with this opinion.

## I.

Marion and Otto Zipf were married in 1955 after Otto Zipf graduated from the Naval Academy. Four children were born of the marriage. During most of the couple's twenty seven year marriage, the husband served as a commissioned officer in the United States Navy. He retired from the Navy in 1975, after twenty years of service. During the marriage, the wife was primarily a homemaker.

On August 31, 1984, the wife filed a bill of complaint for divorce *a vinculo matrimonii*. On June 14, 1985, the trial judge entered a final decree of divorce on the ground that the parties had lived separate and apart continuously for one year, specifically reserving the issues of spousal support and maintenance and equita-

ble distribution for later adjudication. Beginning September 24, 1985, the trial judge held an evidentiary hearing on matters involving equitable distribution. At this hearing, experts for both parties testified concerning the contested value of two items of marital property— 275,000 shares of stock and the husband's military pension. As of the date of filing of the bill of complaint, the husband was receiving $1,901.15 per month in pension benefits.

On May 20, 1986, the trial judge entered an order which awarded to the wife a lump sum amount of $166,000, representing twenty-five percent of $664,000. The amount of $664,000 was derived by reducing the value of the stock ($800,000) seventeen percent due to the lack of voting rights. After finding that the present value of the military pension was $280,000, the order also awarded the wife "one quarter . . . of the present value, that is . . . $70,000," payable at a rate of fifty percent of the husband's gross monthly entitlement. The order preserved both parties' right to appeal the equitable distribution decision and retained jurisdiction over "the issue of spousal support and maintenance, attorney's fees and Court costs, the division of furniture and furnishings and whatever other matters the Court deems necessary and proper as allowed by law." A final order of equitable distribution, spousal support, and counsel fees was issued on August 21, 1987, *nunc pro tunc* to June 2, 1986, in which the judge awarded the wife spousal support of $200 per month. This *final* order "included by reference" the provisions of the May 20 order.

## II.

As an initial matter, the husband argues the wife's failure to appeal within thirty days of entry of the May 20 order bars her from raising the issues decided therein. We disagree. That order specifically continued the cause, retaining jurisdiction to determine issues of spousal support and maintenance, as well as attorneys fees, division of furnishings and other matters necessary for a final adjudication on the merits. By its very language, that order did not purport to dispose of all issues remaining in the suit. *See Burns v. Equitable Associates*, 220 Va. 1020, 1028, 265 S.E.2d 737, 742 (1980). The August 21, 1987, order, which included by reference the provisions of the May 20 order and which embodied the courts rulings as to all matters subsequent to the decree of divorce, was the final, appealable order.

## III.

The wife first complains that the trial judge improperly utilized the date of filing of the bill of complaint, rather than the date of the evidentiary hearing, as the valuation date of the marital assets. She concedes, however, that at the time the trial judge decided the issue in this case, some question existed as to the proper date of valuation. After the September 24 evidentiary hearing and while the matter was under advisement, the trial judge in a letter addressed to counsel expressed a concern that *dicta* in this Court's decision in *Parra v. Parra*, 1 Va. App. 118, 336 S.E.2d 157 (1985), appeared to require the use of the date of filing of the bill of complaint as the valuation date of the parties' marital property. *See id.* at 127, 336 S.E.2d at 162. The trial judge asked if the parties wished to present further evidence on the present value of the pension as of the date of filing of the bill of complaint. In response, the husband submitted a supplemental report by his expert identifying the present value of the pension on that date at $277,533.

Since *Parra*, this Court has determined that, as a general rule, a date as near as practical to the date of trial is the most suitable valuation date. *Mitchell v. Mitchell*, 4 Va. App. 113, 118, 355 S.E.2d 18, 21 (1987); *see also Wagner v. Wagner*, 4 Va. App. 397, 406, 358 S.E.2d 407, 411 (1987); *but see Price v. Price*, 4 Va. App. 224, 232 n.6, 355 S.E.2d 905, 909-10 n.6 (1987).[1] Our review of the record indicates, however, that the wife at no time requested the trial judge to use the date of the evidentiary hearing as the date for valuation of the marital assets. When the issue of the appropriate valuation date arose during the September 24 proceedings, the wife urged the trial judge to use the date of entry of the divorce decree as the appropriate valuation date. In eliciting testimony as to the value of the military pension, stock, and other marital assets, the wife at no time based these calculations on the date of the evidentiary hearing. Furthermore, although the wife's counsel, in a letter to the court dated November 18, 1985, echoed the concerns of the trial judge as to the *Parra* Court's reading of Code § 20-107.3, counsel never questioned the applicability of

---

[1] In 1988, the General Assembly amended Code § 20-107.3(A) to provide that the date of the evidentiary hearing shall be the date for valuation, except for good cause shown to attain the ends of justice, a different date should be used.

*Parra* to the case and did not propose the use of the date of the evidentiary hearing as an alternative valuation date. We cannot say that the manner of valuing the assets was unfair and inequitable to both parties. Further, inasmuch as the argument made before this Court was never made in the trial court, we decline to consider the issue for the first time on appeal. Code § 8.01-384; Rule 5A:18.

## IV.

Citing *Artis v. Artis*, 4 Va. App. 132, 354 S.E.2d 812 (1987), the wife contends that the trial judge abused his discretion in awarding her only a twenty-five percent interest in the stock and military pension. We find the wife's reliance upon that case unpersuasive.

■ The trial judge is required to consider all of the factors of Code § 20-107.3(E) in fixing the monetary award. *Taylor v. Taylor*, 5 Va. App. 436, 444, 364 S.E.2d 244, 249 (1988). Furthermore, the trial judge's award must have some basis in the evidence presented. *Id.* In *Artis*, this Court reversed a decree awarding the wife only fifteen percent of the husband's military pension where the husband had stipulated that the parties' contributions to the general welfare of the family and to the accumulation of marital assets had been equal. 4 Va. App. at 137, 354 S.E.2d at 815. The trial judge in *Artis* failed to indicate how that stipulation, in conjunction with a consideration of other factors in Code § 20-107.3(E), led to the conclusion that the wife was entitled to only fifteen percent of the husband's pension. *Id.*

■ The record in the present case, however, amply supports the conclusion that the trial judge considered the evidence relating to all of the enumerated factors of Code § 20-107.3(E) in determining the wife's entitlement. At the September 24 evidentiary hearing, the trial judge stated that an application of the statutory factors to the evidence led him to conclude that the "contributions, age and fault issues are all washouts, and the length of the marriage . . . is of benefit to both [parties]." With regard to the stock, the judge found significant that, although the initial stock investment was made with joint funds, it was the husband's effort and expertise, as vice president of the company during the four years from its inception, which was instrumental in bringing about

the company's success. In discussing the wife's contribution to the husband's naval career, the court noted that the husband had completed four years at the Naval Academy before the couple's marriage. The judge also found that because of the nature of the husband's military career "there were not many hardship times during this marriage." The trial judge further found that "the wife [was not] left alone with the family and [did not have] to move from here to there, alone." The trial judge determined that the parties "have lived together throughout at least 90 percent, and a little more of their military married life and shared the family responsibilities." The evidence thus supports the trial judge's fashioning of a monetary award which reflected (1) the husband's greater contribution to the acquisition and maintenance of the stock and (2) the husband's completion of his educational training at the Naval Academy as the primary factor which established the marital standard of living, rather than the non-monetary contributions of the wife. We cannot say that in weighing the equities of this case, the trial judge abused his discretion in awarding a twenty-five percent interest in the stock and pension to the wife.[2]

The wife likewise argues that the record provides no basis for the trial judge's determination that a seventeen percent discount should be applied against the formula price of the stock to reflect the sale of voting rights, especially when only the husband was receiving the benefit of the sale of those rights.[3] The husband was one of the original shareholders of class A stock in a highly successful, closely held corporation which provided consulting, engi-

---

[2] We emphasize that the division or transfer of marital property and the amount of any monetary award is a matter committed to the sound discretion of the trial court. By affirming the award in this case, we are holding merely that the record does not support a finding of abuse of discretion by the trial court. We also emphasize that there is no presumption favoring an equal division of assets. *Papuchis v. Papuchis*, 2 Va. App. 130, 132, 341 S.E.2d 829, 830 (1986). Nothing herein should be construed, however, to sanction a disproportionate division of assets in favor of one party simply because that party has been primarily responsible for the development of the marital assets. The non-monetary contributions of each party, as well as the other factors specified in Code § 20-107.3(E) must be considered.

[3] The wife seems to argue that the trial judge should have taken into account the fact that the proceeds from the sale of voting rights were marital property which were being retained by the husband for his own use. However, we find no indication in the record that the wife raised that issue before the trial judge or offered the necessary evidence tending to prove the current existence, use, or waste of such funds.

neering, and computer services to the Department of Defense and other government agencies. Shortly after the formation of the corporation in 1976, the five original shareholders executed a stock redemption agreement. This agreement specified the terms and conditions under which the corporation would be required to acquire, and the estate to sell, the stock of a deceased shareholder. The agreement also gave the corporation and other class A shareholders a right of first refusal in the event that another shareholder desired to sell stock during the shareholder's lifetime. The price at which the corporation or the shareholders would be required to purchase under the redemption agreement was established by reference to a quarterly updated valuation formula. Only in the event the corporation and each of the shareholders elected not to purchase the shares could the shares be offered to other persons.

In 1978, the class A stock was split 5 to 1. When the husband resigned from his position as vice president in 1980, he retained 55,000 shares of class A stock titled in his name. Ten months after the parties separated, the husband agreed to convey the voting rights to all 55,000 shares to one of the original shareholders for the sum of $100,000, payable in installments over a five year period. This agreement was to expire on May 31, 1988.[4] A second 5 to 1 stock split on May 24, 1984 increased the husband's holdings to 275,000 shares, representing an eleven percent minority interest in the corporation.

The wife's expert, Dennis Gurtz, testified that in his opinion the stock was worth $915,750, a price of $3.33 per share. However, the trial judge based his findings on the testimony and detailed reports submitted by Jon O. Clarke, the husband's expert witness. In a section of his report entitled "Fair Market Value," Clarke noted that the determination of the fair market value of the husband's 275,000 class A shares was governed in large part by the redemption agreement, which in practical terms limited the market for the shares.

Clarke testified that the formula price applied to the stock by the corporation was essentially equivalent to the gross value of the

---

[4] Although the redemption agreement applies to the sale of shares, it does not address the sale of voting rights. Moreover, there is no evidence in this record whether the redemption agreement precluded the husband's sale of the voting rights.

stock. His report cited case law in support of the use of the formula price specified in a restrictive agreement as the gross value of a closely held business in equitable distribution. *See, e.g., Petterson v. Petterson*, 366 N.W.2d 685 (Minn. Ct. App. 1985); *Stolowitz v. Stolowitz*, 106 Misc. 2d 853, 435 N.Y.S. 2d 882 (1980). Relying upon this case law, the effective lack of market for the husband's shares outside the corporation and other class A shareholders, and the corporation's history of strict reliance on the formula price, Clarke concluded that the formula price dictated the gross value of the shares. The formula price as the date of filing of the bill of complaint was $2.91 per share.

In arriving at what he determined to be the fair market value of the shares, Clarke made adjustments to the gross value or formula price to reflect the price he perceived the shares would reasonably command in an open transaction. Clarke testified that a thirty percent discount to the gross value for lack of marketability of the closely held stock was appropriate. In addition, Clarke applied a second, seventeen percent discount, reflecting the sale of voting rights and the further diminution of the husband's eleven percent minority interest caused by the sale. In arriving at the seventeen percent discount, Clarke compared the contract sale price of the voting rights to the formula price value of all the shares at the time the sale occurred, thus basing his estimate on the value the husband himself placed on the voting rights. In effect, Clarke recognized that the formula price would serve as a ceiling on the value of the stock. In the off chance that the corporation would not exercise its option to purchase the shares and the shares were eventually offered on the open market, Clarke testified that the fair market value of those shares would be substantially diminished due to the various restrictions imposed on the stock.

The trial judge did not adopt the thirty percent discount for lack of marketability but did apply the seventeen percent discount from the formula price in arriving at the dollar value of the shares subject to equitable distribution. We conclude that in choosing a figure somewhere between the ceiling price of $800,000 and the lowest estimate provided by the husband's expert of $423,500 the trial judge appropriately balanced the risks and probabilities accompanying such a potential transaction. We therefore find no error in the trial court's determination on the evidence that the value of the stock subject to equitable distribution was $664,000.

## V.

The wife also argues that the trial judge further erred in fixing her twenty-five percent marital share of the husband's pension at the sum certain $70,000, which is one quarter of the present value of the pension. The award of $70,000 was payable at a rate of fifty percent of the husband's gross monthly entitlement. She contends that fixing her entitlement at a sum certain, rather than at a percentage of all future payments, deprived her of the full value of the twenty-five percent share. She acknowledges that the trial court lacked authority to award interest on this sum, *see Pledger v. Pledger*, 6 Va. App. 627, 371 S.E.2d 43 (1988); *McLaughlin v. McLaughlin*, 2 Va. App. 463, 346 S.E.2d 535 (1986), but she insists that neither the statute nor the case law precluded the trial judge from considering the economic fact that $70,000 paid over a period of years in monthly installments does not equal $70,000 in present value.

At the time of filing of the bill of complaint, Code § 20-107.3(D) provided: "Based upon the equities and the rights and interests of each party in the marital property, the court may grant a monetary award, payable either in a lump sum or over a period of time in fixed amounts, to either party." Code § 20-107.3(E)(8) provided that in determining the amount of the monetary award the trial judge must consider "[t]he present value of pension or retirement benefits, whether vested or nonvested." In setting the award, the trial judge was also limited by Code § 20-107.3(G) which provided:

No part of any monetary award based upon the value of pension or retirement benefits, whether vested or nonvested, shall become effective until the party against whom such award is made actually begins to receive such benefits. No such award shall exceed fifty percent of the cash benefits actually received by the party against whom such award is made.

We agree with the wife that once the trial judge determined that she was entitled to twenty five percent of the pension as her marital share, the trial judge then erred by fixing that entitlement at a sum certain of $70,000 by multiplying twenty-five percent of the present value of the pension. By equating those two calcula-

tions, the trial court inadvertently deprived the wife of her proper entitlement to that portion of the pension that the trial judge had determined to be her marital share. A present value calculation is of direct use only where payment of the portion of the monetary award attributable to the pension is to occur immediately rather than over a period of time. *Whitfield v. Whitfield*, 222 N.J. Super. 36, 51, 535 A.2d 986, 994 (1987); *see generally* Troyan, *Pension Evaluation and Equitable Distribution*, 10 Fam. L. Rep. (BNA) 3001 (Nov. 22, 1983). Where, as in this case, payment is statutorily deferred over the period of time as the husband receives benefits, the use of the present value in fixing the wife's entitlement at a sum certain has the multiple effect of failing to account for future earnings and adjustments that are attributable to the wife's deferred share, disregarding any future appreciation in the amount of the entitlement by virtue of inflation, and inappropriately applying an additional discount to the present value calculation. *See Whitfield*, 222 N.J. Super. at 51-52, 535 A.2d at 994-95 ("[I]t would be unthinkable to require the pensioner's spouse to defer receipt of an equitable share of the pension until a future date but reduce that entitlement to its value as of the time of the divorce").

■ The statute, as written at the time this issue was before the trial court, paradoxically required the trial judge to consider the present value of the pension, yet also required that "no . . . award . . . shall exceed fifty percent of the cash benefits actually received by the party against whom the award is made."[5] In view of this latter requirement and the fact that the husband was receiving his benefits in periodic monthly payments, the trial judge was not at liberty to award an immediately payable lump sum to the wife. Because use of the present value to fix a sum certain monetary award derived from a pension is not only unnecessary, but inappropriate where distribution is deferred, we conclude that in this instance the legislature did not intend the present value to serve as a means of diminishing the true value of the monetary award. The present value calculation serves two important functions. First, it provides the trial judge with an informational base figure to assist in calculating the amount of the award. In addi-

---

[5]   In 1988, the General Assembly repealed Code § 20-107.3(E)(8), which previously required the trial judge to consider the present value of the pension in making the monetary award.

tion, the present value of a pension would be useful information for the "party against whom a monetary award is made," who might wish immediately to "satisfy the award, in whole or in part, by conveyance of property, subject to the approval of the court." Code § 20-107.3(D). "The only reason for discounting to present value is to justify the payment in present dollars of a sum of money which is not due, if at all, until some time in the future." *Whitfield*, 222 N.J. Super. at 51, 535 A.2d at 994.

If the present value of the pension is used to fix a spouse's marital share entitlement as a sum certain even though the payment to the spouse is deferred, the trial judge must also award as a part of that fixed sum certain amounts necessary to compensate the spouse for the additional discounting that results. Thus, on remand, if the trial judge assesses the amount of the monetary award attributable to the pension as a fixed sum certain by reference to the present value, the record must contain appropriate evidence to support the calculation and to establish that an additional discounting has not resulted. Such a consideration is not precluded by our holdings in *Pledger* or *McLaughlin*. As an alternative, however, because the husband's entire pension was apparently earned during the marriage of the parties, nothing herein should be taken to preclude an award of a percentage of the pension based upon consideration of the present value and payable as a percentage of each pension payment during the life of the pension.

## VI.

Because we reverse and remand the decree as to the monetary award, the issue of spousal support must also be remanded for reconsideration. *Brinkley v. Brinkley*, 5 Va. App. 132, 141-42, 361 S.E.2d 139, 143-44 (1987). We therefore briefly address an apparent contradiction in the trial judge's comments regarding the spousal support award.

■ On the one hand, the trial judge referred to the wife's obtaining an income from investment of the cash which could be derived from the sale of the marital assets. On the other hand, the trial judge's comments indicated that he intended the wife to invade the principal of her estate as another source of income for her support. The law does not require the spouse who seeks sup-

port to exhaust his or her own estate in order to qualify, relieving the other spouse of all obligation of support until that estate is depleted. *Ray v. Ray*, 4 Va. App. 509, 514, 358 S.E.2d 754, 757 (1987). The income of the party who is required to pay is the fund from which the allowance of spousal support is to be made, and the enactment of the equitable distribution statute did not vitiate this well established rule. *Id.* at 513, 358 S.E.2d at 756. Although the provisions made with regard to the marital property under Code § 20-107.3 are factors to consider in making the support award, a decree which singles out this factor to the exclusion of others, and which essentially treats the support-seeking spouse's marital assets as income, cannot withstand scrutiny on appeal. *Id.* at 513-14, 358 S.E.2d at 756.

For the foregoing reasons, the decision of the trial court is remanded for further proceedings consistent with this opinion.

*Affirmed in part,*
*reversed in part,*
*and remanded.*

Duff, J., and Keenan, J., concurred.