COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Coleman and Elder
Argued at Richmond, Virginia


FRANCIS C. BLOXTON, JR.

                                    MEMORANDUM OPINION[*] BY
v.    Record No. 1041-98-2          JUDGE SAM W. COLEMAN III
                                         MAY 4, 1999
WENDY H. BLOXTON


               FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                      Herbert C. Gill, Jr., Judge

          John N. Clifford (Shirley L. Hennessy;
          Clifford & Duke, P.C., on briefs), for
          appellant.

          Robert C. Elliott, II (Rebecca E. Duffie; The
          Elliott Law Firm, on brief), for appellee.


     In this equitable distribution appeal, Francis C. Bloxton

(husband) contends the trial court erred (1) by dividing the

marital assets equally between the parties, (2) by requiring

husband to pay a portion of the credit card debt incurred by Wendy

H. Bloxton (wife), (3) by crediting wife $2,000 for an air

conditioning unit installed in the husband's separately owned home

with marital funds, and (4) in calculating the marital portion of

the husband's pension.  We find that the trial court did not abuse

its discretion by dividing the marital property equally between

the parties, by ordering the husband to pay a portion of the

---

     *Pursuant to Code § 17.1-413, recodifying Code § 17-116.010,
this opinion is not designated for publication.

wife's credit card debt, or by awarding the wife a $1,000 credit[1] for her share of a marital asset traced from husband's separately owned property.  However, we hold that the trial court erred in calculating the marital share of husband's pension plan and we reverse that ruling.

BACKGROUND

The Bloxtons were married for six years.  They had no children born of the marriage.  At the time of divorce, husband was fifty-one years old and wife was forty years old.  At various periods during the marriage, wife's three teenage children from a prior marriage lived with the Bloxtons.

From 1988 to 1990, wife contributed from $100 to $700 a month from her earnings into the marital account.  Over the course of the six-year marriage, husband earned $231,678, all of which he deposited in the parties' joint account.  During the same period, wife earned $76,272, $11,014 of which she deposited in the joint account.  After obtaining a job at a retail store in 1992 and until 1994, wife paid half the house payment, half the electric bill, and half the telephone bill.  She also paid fully for her personal long distance telephone calls.  Additionally, she purchased family groceries and incidentals including cleaning supplies.  She estimated that bill payments and payments into the

_____

[1]Although husband contends the trial court erred by awarding wife $2,000, in fact the trial court merely classified $2,000 as marital and awarded wife $1,000.

marital account represented about seventy-five percent of her approximately $20,000 annual salary. Near the end of the marriage, the husband closed the joint account over a controversy surrounding a check that wife wrote to a grocery store for thirteen dollars. After husband closed the account, wife paid her share of the monthly expenses in cash.

During the marriage, the parties reduced the mortgage principal for husband's separately owned marital residence by $15,449. The Bloxtons spent $2,000 of marital funds to install in the residence a central air conditioning system. The parties also expended marital funds on new windows and floor joists.

Husband retired at age fifty after 25.245 years of service with the Army and Air Force Exchange Service. Husband had 3.863 additional years of military service and 1.103 years of accumulated sick leave that were credited toward his retirement, resulting in a total of 30.211 creditable years. Husband had earned sick leave at the rate of four hours for every two weeks. He testified that during the marriage, he had missed only one or two hours of work.

Based on evidence concerning the character and nature of the debts, the trial court classified four of wife's credit card debts and two of husband's debts as marital.

-

ANALYSIS

I.

Husband contends that the trial court abused its discretion by ordering that the marital property be divided equally.

The division of marital property is committed to the sound discretion of the trial court. See Amburn v. Amburn, 13 Va. App. 661, 666, 414 S.E.2d 847, 850 (1992). On review, a divorce decree based solely on depositions is not as conclusive as a decree based on ore tenus evidence; however, such a decree is nevertheless presumed correct and will not be reversed if supported by substantial evidence. See Capps v. Capps, 216 Va. 382, 384, 219 S.E.2d 898, 899 (1975). Code § 20-107.3(E) specifies the factors that a trial court must consider in deciding how to equitably distribute marital property. However, the trial court has broad discretion in the consideration it gives each statutory factor. "A trial court, when considering these factors, is not required to quantify the weight given to each, nor is it required to weigh each factor equally, though its considerations must be supported by the evidence." Marion v. Marion, 11 Va. App. 659, 664, 401 S.E.2d 432, 436 (1991).

The trial court considered the evidence in light of the factors specified in Code § 20-107.3(E). On husband's motion, the trial judge reconsidered the evidence in light of those factors. Although the judge did not articulate the process he followed in considering the statutory factors, such an

-

articulation is not required, and the evidence was sufficient to support the trial judge's decision to equally divide the marital property.

The evidence shows that the husband's monetary contributions to the acquisition of marital property exceeded the wife's monetary contributions. However, we do not "sanction a disproportionate division of the assets in favor of one party simply because that party has been primarily responsible for the development of the marital assets." Zipf v. Zipf, 8 Va. App. 387, 393 n.2, 382 S.E.2d 263, 266 n.2 (1989). Among the factors to be considered are the parties' non-monetary contributions to the well-being of the family. See Bentz v. Bentz, 2 Va. App. 486, 489, 345 S.E.2d 773, 774-75 (1986).

The evidence of wife's non-monetary contributions to the well-being of the family, including housework, yard work, and activities incidental to those chores, was substantial. Additionally, the wife made significant monetary contributions of marital assets. Accordingly, we hold that the trial judge, having considered and applied the factors of Code § 20-107.3(E) to the evidence, did not abuse his discretion by ordering an equal division of the marital assets.

## II.

Husband contends that the trial court erred by ordering husband to pay a portion of wife's credit card debt. Code § 20-107.3(C) authorizes the court to apportion and order

-

payment of the debts of the parties that are incurred prior to the dissolution of the marriage.  In apportioning debt, Code § 20-107.3(C) requires that the court also consider the factors listed in Code § 20-107.3(E).  The trial judge stated that he apportioned the debt after having considered the factors listed in Code § 20-107.3(E).  Wife testified as to the nature and general character of the various debts.  She excluded from the debt balances purchases she made after the dissolution of the marriage.  Of the six debts about which she testified, the trial court determined that wife incurred four of these debts to cover marital expenses.  She testified that some of the debt represented the cost of living expenses incurred as a result of marital turmoil, but before the date of last separation.  Given the evidence in the record, we cannot say that the trial court abused its discretion by ordering husband to pay half of the four credit card debts.

<u>III.</u>

Husband asserts that the trial court erred by crediting wife $2,000 for central air conditioning installed with marital funds in the marital residence that husband owned separately. In fact, the trial court awarded wife a $1,000 credit after finding that wife traced $2,000 of marital funds that had been commingled with the husband's separate property.

The trial court relied upon Code § 20-107.3(A)(3)(d) to classify the $2,000 as marital.

-

> When marital property and separate property
> are commingled by contributing one category
> of property to another, resulting in the
> loss of identity of the contributed
> property, the classification of the
> contributed property shall be transmuted to
> the category of property receiving the
> contribution. However, to the extent the
> contributed property is retraceable by a
> preponderance of the evidence and was not a
> gift, such contributed property shall retain
> its original classification.

Code § 20-107.3(A)(3)(d).

The wife had the burden to trace the $2,000 contributed to or commingled with the separate real estate in the form of an identifiable asset, in this case the central air conditioning unit. See Rahbaran v. Rahbaran, 26 Va. App. 195, 207-08, 494 S.E.2d 135, 141 (1997). However, in order to trace the $2,000 as marital property contributed to and commingled with the separate real estate, Code § 20-107.3(A)(3)(d) does not require that the marital portion be segregated from the whole. See id. Tracing involves the two-step process of (1) identifying a specific portion of hybrid property as either marital or separate, and (2) directly tracing that identifiable portion to either a separate or marital asset. Id. The wife proved by a preponderance of the evidence that the air conditioning unit was an identifiable and measurable portion of the marital residence and that $2,000 of marital funds was traceable to that portion of the hybrid property. See id. Accordingly, the trial court

-

did not err by awarding the wife $1,000 as her share of that marital asset.

## IV.

Finally, husband contends that the trial court erred in calculating the marital portion of his pension plan. To determine the marital portion of the pension, the trial court employed the coverture fraction endorsed in Primm v. Primm, 12 Va. App. 1036, 1038, 407 S.E.2d 45, 46 (1991). The marital share consists of a fraction in which the numerator represents the creditable years of employment husband accrued during the marriage and the denominator represents the total number of creditable years at the time of retirement. See id. The trial court correctly included in the denominator the 1.103 years of sick leave accrued during the course of husband's employment and credited toward his retirement.[2] In its opinion letter, the trial court stated its intention to add to the numerator of the fraction the amount of sick leave that husband acquired during the marriage. Although the trial court correctly articulated the method for calculating the numerator, the trial court used

_____

[2]On appeal, husband contends that the sick leave did not increase his retirement benefits but rather that the sick leave merely allowed him to retire earlier. However, husband makes no reference to the record to support this contention. In fact, husband testified that his retirement was calculated based on 30.211 years of service, a figure which includes 1.103 years of sick leave. Thus, like the trial court, we treat the accrued sick leave as service creditable to husband's retirement benefits.

-

an inflated figure for the sick leave acquired during the marriage. In calculating the numerator -- that is, the number of creditable years accrued during the six years of marriage -- the trial court added 1.03 years of sick leave. Where 1.103 years represented the total acquired sick leave credit for 25.245 years of service, husband acquired only a fraction of that amount during the marriage. Husband testified that he acquired four hours of leave every two weeks of service. He further testified that he missed only one or two hours of service during the entire marriage. Thus, husband would have accumulated 104 hours of service per year, or 624 hours during the entire six-year marriage. This figure represents .3 years of service. Accordingly, the trial court erred in using 7.03 instead of 6.3 as the numerator of the coverture fraction. Therefore, upon remand, the wife's marital share, based upon the Primm coverture fraction adopted by the trial court, shall be calculated as follows: 6.3/30.211 X 50% = 10.4% X amount of retired pay.

In summary, we find the trial court did not abuse its discretion by dividing the Bloxtons' marital property equally, by ordering husband to pay for a portion of wife's credit card debt, or by crediting wife $1,000 for the marital funds traced to the central air conditioning. Finally, although the trial court employed a proper mechanism for determining the marital portion of husband's retirement account, the trial court erred

-

in calculating the creditable years of service accumulated during the marriage.

We find that the husband had reasonable grounds for appeal. Therefore, wife's request for an award of attorney's fees and costs of this appeal is denied.  See <u>Gayler v. Gayler</u>, 20 Va. App. 83, 87, 455 S.E.2d 278, 280 (1995); Rule 5A:30.

Accordingly, the trial court's final decree is affirmed in part, vacated in part, and remanded for the trial court to amend the decree in conformity with this opinion.

<u>Affirmed in part,</u>
<u>vacated in part,</u>
<u>and remanded.</u>

-