COURT OF APPEALS OF VIRGINIA


Present: Judges Elder, Clements and Senior Judge Annunziata


LOWELL F. SMITH

                                                                    MEMORANDUM OPINION[*]
v.        Record No. 1574-07-4                                          PER CURIAM
                                                                      FEBRUARY 5, 2008
ALICE L. THORNTON-SMITH


                    FROM THE CIRCUIT COURT OF CLARKE COUNTY
                                John R. Prosser, Judge

            (Marilyn Ann Solomon, on briefs), for appellant.  Appellant
            submitting on briefs.

            (James A. Klenkar; Hall, Monahan, Engle, Mahan & Mitchell, on
            brief), for appellee.  Appellee submitting on brief.


        Lowell F. Smith (husband) appeals the trial court's June 22, 2007 order awarding Alice L.

Thornton-Smith (wife) spousal support.  On appeal, he contends the trial court erred because:

(1) wife failed to submit an income and expense statement or other sufficient evidence to establish

she needed spousal support and in what amount; (2) the award required husband to liquidate his

assets in order to pay it, and the court failed to consider tax consequences to husband; (3) the trial

court improperly relied upon non-economic factors and an erroneous analysis of the parties'

standard of living; (4) the trial court erred by making new findings of fact regarding spousal support

without taking new evidence, which contradicted its previous findings of fact; and (5) the trial court

erred in holding that husband failed to prove wife was voluntarily underemployed.  We find no

reversible error and affirm the trial court.

-----

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

The parties were married on December 21, 2000, and separated on September 5, 2003. Wife filed a bill of complaint seeking a divorce on September 9, 2003.

From May until December 2005, the trial court conducted numerous hearings and made several rulings relating to the parties' final decree of divorce. By order dated April 17, 2006, the trial court entered a final decree of divorce in which it equitably distributed the parties' property, awarded wife monthly spousal support of $2,500 for fourteen months, and awarded wife attorney's fees.

Husband appealed the trial court's decision to this Court, which affirmed in part and reversed and remanded in part. Specifically, we affirmed the trial court's rulings classifying real property in Arlington and Berryville, offsetting wife's debts/loans by her portion of the marital equity in the Arlington residence, and awarding wife attorney's fees. We reversed the trial court's decision regarding the distribution of the Volkswagen and remanded for the trial court to reexamine the equitable distribution award. Because we reversed the equitable distribution award in part, we did "not address the assignment of errors pertaining to spousal support," and remanded to the trial court "to consider anew its spousal support award in light of the changes in the equitable distribution award." Smith v. Thornton-Smith, Record No. 1165-06-4 (Va. Ct. App. March 6, 2007).

On June 4, 2007, the trial court issued an opinion letter containing findings of fact and conclusions of law pursuant to this Court's order of remand. In it, the trial court awarded husband the Volkswagen, reaffirmed its decision regarding husband's mortgage payoff to offset wife's credit card debt and advance, and considered the factors in Code § 20-107.1 in making an award of spousal support. The trial court awarded wife $2,500 per month in rehabilitative spousal support for

- 2 -

fourteen months. On June 22, 2007, the trial court entered a final order memorializing its findings and conclusions contained in its June 4th opinion letter.

ANALYSIS

1. and 3. <u>Spousal Support Award (Income and Expense Statement and Standard of Living)</u>

The standard of review for deciding spousal support issues is well settled:

> "Whether and how much spousal support will be awarded is a matter of discretion for the trial court." <u>Barker v. Barker</u>, 27 Va. App. 519, 527, 500 S.E.2d 240, 244 (1998). "'In fixing the amount of the spousal support award, . . . the court's ruling will not be disturbed on appeal unless there has been a clear abuse of discretion. We will reverse the trial court only when its discretion is plainly wrong or without evidence to support it.'" <u>Moreno v. Moreno</u>, 24 Va. App. 190, 194-95, 480 S.E.2d 792, 794 (1997).

<u>Northcutt v. Northcutt</u>, 39 Va. App. 192, 196, 571 S.E.2d 912, 914 (2002); <u>see also</u> <u>Huger v. Huger</u>, 16 Va. App. 785, 791, 433 S.E.2d 255, 259 (1993).

Income & Expense Statement

Husband contends the trial court erred in awarding wife spousal support because wife never filed an expense and income statement. In making a spousal support award, the trial court is obliged to consider, *inter alia*, "[t]he obligations, needs and financial resources of the parties, including but not limited to income from all pension, profit sharing or retirement plans, of whatever nature." Code § 20-107.1(E)(1). Nothing in the code requires the filing of such a document as long as the record contains sufficient facts establishing financial resources, needs, and obligations.

The record contains sufficient evidence from which the trial court could determine wife's need and the amount of short-term rehabilitative spousal support she required. Wife had no income-producing assets and needed to borrow money from husband during the separation to pay her expenses and office rent despite receiving *pendente lite* support of $2,750 per month. The record contains wife's bank statements from 2003 until 2005 reflecting her account in July

- 3 -

2004, October 2004, December 2004, and March 2005 had a negative balance, and from May 2004 until March 2005, wife's monthly account balance never exceeded $321.48. After separation, wife "sold everything [she] could to try to pay bills." Wife pays $850 per month for rent.

When the parties met, wife was a pastoral counselor at a non-profit agency working two days per week in West Virginia. During the marriage, wife continued to commute to work two days per week. Wife testified that during the marriage, she "put[] everything [she] earned into getting back and forth [to work] and putting things towards setting up the [Arlington] house." She "didn't have anything extra." Wife's 2003 income tax return reflects an adjusted gross income of $11,719, consisting of $8,880 in business income and $3,339 in spousal support.

Sufficient evidence established wife's obligations, needs, and financial resources and enabled the trial court to determine her spousal support need. Accordingly, the trial court did not abuse its discretion.

Standard of Living

Husband disagrees with the trial court's finding that the parties had a high standard of living and that they traveled extensively.

Wife testified husband sold his Georgetown home and bought a home in Arlington which was valued at trial at over $500,000. Later, husband also bought a home in Berryville as a home-base from which the parties could travel after husband retired. That home was valued at $500,000. During the marriage, the parties had access to and used both homes. When they married, husband asked wife that she not increase her practice. In response to questioning by the trial court, husband acknowledged the parties planned to travel extensively during the marriage, and he indicated they traveled to South America twice before they were married. The record shows the parties traveled extensively between their two houses, and husband conceded the

- 4 -

parties used the Volkswagen to take trips together. Moreover, wife used the Volkswagen to commute regularly to West Virginia. Although wife did not accompany husband or was not invited to accompany him on trips (as he earlier promised), the record shows that husband traveled to California twice without wife and also planned a trip to Venezuela without wife.

The record shows there was the promise of and financial means for extensive travel, and the parties did travel extensively, although not always together. Moreover, they had access to two high value homes and wanted for nothing during the marriage. Wife now has trouble paying expenses and lives in an apartment costing her $850 per month. The evidence supports the trial court's finding that the parties' standard of living was a relevant factor in determining spousal support.

 2. Liquidating Husband's Assets to Pay Spousal Support and Tax Consequences

In his second question presented, husband contends the trial court "abused its discretion when it awarded the Wife $2,500 per month in spousal support" when husband "cannot afford to pay [that amount] without liquidating his assets."

Husband's argument is premised on the theory that he did not have sufficient monthly income to pay the fourteen monthly support payments, thus, the trial court erred in finding he had the ability to pay the support. Husband posits in his brief that his monthly expenses are more than his monthly income, thus he would be required to liquidate assets to satisfy his limited duration spousal support obligation. This argument assumes husband presented sufficient, credible evidence to establish that his monthly expenses outweighed his monthly income. In his brief, husband argued his "monthly expenses are about $5,000.00," and he twice cites to page 2059, lines 4-7, of the appendix to indicate where in the record he established his expenses. Our review of those lines on page 2059 shows that husband was referring to his monthly income, not

his expenses. In his brief, husband failed to list in detail his monthly expenses, nor did he cite where in the voluminous record he presented his monthly expenses.[1]

Husband averred in his brief that "the Trial Court acknowledge[d] the Husband had insufficient monthly income to pay the spousal support awarded." However, he failed to indicate where in the fourteen volumes of appendi the trial court made such a finding. That statement is contradicted by the trial court's June 2007 order finding that "Husband can afford to pay the spousal support indicated."

Moreover, nothing in the code requires a trial court to protect a payor spouse from having to borrow or liquidate assets to pay a support obligation. The legal authority upon which husband relies fails to support his assertion that a payor/obligor spouse is protected from having to liquidate assets to pay support. That case, Zipf v. Zipf, 8 Va. App. 387, 382 S.E.2d 263 (1989), merely stands for the proposition that "*the spouse that seeks support*" is not required "to exhaust his or her own estate in order to qualify [for support], and reliev[e] the other spouse of all obligation of support until that estate is depleted." Id. at 398-99, 382 S.E.2d at 269-70 (emphasis added).

Husband testified he receives approximately $5,400 per month gross ($4,100 net) from his retirement pension and an additional $1,000 per month from investment income. He owns a house in Arlington worth $512,000, and a house in Berryville valued at $500,000. Neither property is encumbered with a mortgage. He also is a partner in Choptank Ventures, which owns property in Maryland. Following the May 2004 interrogatories, husband purchased property in Washington State for $115,000. He used money from his GE Interest Plus account to make that

---

[1] Our review of the record disclosed no exhibits entitled "Expense Sheet," and the table of contents for the fourteen volumes of appendi does not reference such an expense statement. Moreover, husband failed to list his monthly expenses in his brief or reference where such evidence was introduced at trial.

purchase. At the time of separation, that account had a balance of $438,550. Husband stated at trial that he had $200,000 in his bank account and $100,000 in mutual funds and stocks. Thus, at a minimum, the record demonstrates that husband owns cash and assets valued in excess of $1.4 million.

Moreover, when the trial court first entered the decree on April 17, 2006, husband posted a $50,000 cash bond. The trial court released $12,000 of the bond to pay attorney's fees, leaving a balance of $38,000. Fourteen months of spousal support at $2,500 per month totals $35,000. Thus, husband has essentially pre-paid the entire spousal support award. Furthermore, husband failed to explain what assets he liquidated or has to liquidate to pay the award and what tax consequences he would incur.[2]

The record contains sufficient evidence to support the trial court's decision that husband could afford to pay the limited duration support, therefore, the trial court did not abuse its discretion.

As to husband's argument that the trial court erred in failing to consider tax implications, the record shows the trial court did consider all the relevant tax considerations in its June 2007 findings. It noted that husband was to receive a tax credit for his support payments. Because husband had the financial ability to pay, no other tax considerations were implicated by the trial court's ruling.

---

[2] Because husband owns two houses unencumbered by liens or mortgages with a combined value of one million dollars, he could borrow a small amount and not have to liquidate any assets. Having so much equity and having already paid the support through a bond, it is unclear why husband would have the need to liquidate any assets and incur tax penalties.

4. Different Findings on Remand

Husband contends the trial court erred in awarding wife spousal support because the findings of facts differed from those in the earlier findings made before remand. According to husband, those findings were conclusive and unalterable.

We specifically reversed the equitable distribution award and remanded with direction that the trial court "consider anew its spousal support award." Thus, on remand the trial court had jurisdiction and authority to reexamine the evidence and redetermine those two issues. See Robinson v. Robinson, 45 Va. App. 682, 703, 613 S.E.2d 484, 494-95 (2005) ("Where the equitable distribution award is appealed and the court orders that 'the provisions with regard to the marital property are to be considered on remand, the court must necessarily re-examine spousal support in the light of whatever new or different considerations flow from the additional proceedings.'" (quoting McGinnis v. McGinnis, 1 Va. App. 272, 277, 338 S.E.2d 159, 161 (1985))); cf. Torian v. Torian, 38 Va. App. 167, 175-76, 562 S.E.2d 355, 359-60 (2002) (holding trial court was not bound by its preliminary written ruling regarding division of marital assets and retained authority to alter that ruling until equitable distribution order was final).

Each finding in the June 2007 order is supported by the evidence and did not increase husband's earlier obligation, despite husband's receipt of the Volkswagen. The original December 2005 order listed twelve out of thirteen statutory factors in wife's favor and found in paragraph/factor 6 that "[t]his factor favors neither party." The June 2007 order listed all thirteen factors in wife's favor, finding anew that factor 6 favored wife. However, that change in paragraph/factor 6 more accurately reflected the findings in the December 2005 order, which noted in paragraph 2 that "Husband's attention to an old female friend during Memorial Day 2003 sowed the seeds which grew to be deadly to the marriage leading to the separation." Thus, the trial court had already made that determination, and it merely corrected its finding as to

- 8 -

paragraph 6 when it found that factor favored wife based on husband's affiliation with a female friend.

Because the trial court was required on remand to reconsider its award of spousal support in light of its redetermination of its earlier equitable distribution award, and because those findings were supported by the evidence, we disagree with husband's argument and hold that the trial court's findings on remand were not "arbitrary," did not lack "procedural correctness," and were not "fundamentally erroneous."

### 5. Imputation of Income/Voluntary Underemployment

Husband contends the trial court erred in refusing to find wife was voluntarily underemployed.

> Whether a person is voluntarily unemployed or underemployed is a factual determination. In evaluating a request to impute income, the trial court must "consider the [parties'] earning capacity, financial resources, education and training, ability to secure such education and training, and other factors relevant to the equities of the parents and the children."

Blackburn v. Michael, 30 Va. App. 95, 102, 515 S.E.2d 780, 784 (1999) (quoting Niemiec v. Dep't of Soc. Servs., 27 Va. App. 446, 451, 499 S.E.2d 576, 579 (1998)). The party seeking imputation of income has the burden of proving that the other party is voluntarily underemployed or is voluntarily foregoing gainful employment. Id. The decision to impute income is within the sound discretion of the trial court, and its refusal to impute income will not be reversed unless plainly wrong or unsupported by the evidence. See Saleem v. Saleem, 26 Va. App. 384, 393, 494 S.E.2d 883, 887 (1998); Code §§ 20-107.1(E)(1), and 20-108.1(B)(3).

When wife met husband, she was an Episcopal priest and a pastoral counselor for a non-profit counseling agency. She has been a counselor since 1983. Although a counselor might make as much as $85 per hour, wife's agency charged clients according to their ability to pay, thus, most of the clients received services for free or a reduced rate, usually about $25 per

session.  Wife testified she had no clients paying $85.  A few months before she met husband, she turned down a job in Guatemala and was planning on leaving the agency.  However, she continued working in West Virginia two days per week.  Husband encouraged her not to increase her workload after they were married so she could have flexibility to travel with him when he retired.  Wife's 2003 income tax return reflected business income of $8,880 from working two days per week.  Wife further testified that husband contacted church authorities and made personal comments about her that affected her ability to obtain employment opportunities elsewhere after she recovered from her illnesses.

Moreover, wife suffered from diagnosed and undiagnosed illnesses during the marriage, and her health affected her energy level and ability to perform work on an uninterrupted basis.  Although some of wife's medical conditions remain stable, she still takes medications for anemia and has progressive lung disease.

Based on the large amount of evidence in the record regarding wife's work history and medical condition, the trial court did not abuse its discretion in determining that husband failed to satisfy his burden to prove wife was voluntarily underemployed.

For the reasons stated, the trial court's award of rehabilitative spousal support is affirmed.

Affirmed.