UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Frank, Humphreys and Huff
Argued at Richmond, Virginia


MURRAY HARDISON WRIGHT

MEMORANDUM OPINION[*] BY
v. Record No. 0275-12-2 JUDGE ROBERT J. HUMPHREYS
OCTOBER 16, 2012

NANCY LIND MERCER WRIGHT


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Richard D. Taylor, Jr., Judge

S. Sadiq Gill (Christopher S. Colby; Vandeventer Black, LLP, on
briefs), for appellant.

Charles E. Powers (Robert E. Henley, III; Batzli Wood & Stiles, PC,
on brief), for appellee.


Murray Hardison Wright ("husband") appeals the final order of the circuit court reducing

his spousal support obligation to Nancy Lind Mercer Wright ("wife"). The overall theme of

husband's argument is that wife has no need for any spousal support given her assets and

potential sources of income. For the following reasons, we affirm the circuit court's order.

I. ANAYLSIS

Husband assigns nineteen errors to the judgment of the circuit court, many of which are

procedurally defaulted. As this Court noted in Fadness v. Fadness, 52 Va. App. 833, 850-51,

667 S.E.2d 857, 866 (2008), the "'throw everything at the wall and hope something sticks'

approach utilized in this appeal is as unappreciated as it is ineffective." "Appellate courts are not

unlit rooms where attorneys may wander blindly about, hoping to stumble upon a reversible

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication. Because
this is an unpublished opinion that carries no precedential value and the parties are fully
conversant with the record, we recite only the facts relevant to our analysis.

error." Id. at 851, 667 S.E.2d at 866. Yet this was the approach taken by husband's attorney in this case. Husband essentially recasts the same purported error multiple times as different assignments of error with slightly altered wording. Husband did not address his nineteen assignments of error in any particular order and, in an apparent stream of consciousness approach to appellate argument, addresses the same assignment of error in multiple sections throughout his brief. See Rule 5A:20(e) ("With respect to each assignment of error, the standard of review and the argument . . . shall be stated in one place and not scattered through the brief."). It ought to be axiomatic that briefs in the nature of those we criticized in Fadness and filed by counsel for husband in this case lack serious persuasive merit. The inefficient use of this Court's resources by requiring it to slog through an unorganized brief with redundant arguments, some of which misrepresent the holding of the court below, do no service to the representation of a client seeking serious appellate review of any meritorious issues.[1]

---

[1] Initially we note those assignments of error that husband has defaulted or which can be disposed of summarily:

Assignment of Error No. 3: "The [circuit] court erred in finding that requiring [wife] to spend some of the growth in her Scott & Stringfellow investment portfolio constituted improper 'invasion of principal.'" This assignment of error is without merit as the circuit court made no such finding. To support that this was the circuit court's finding, husband cites a page in the September 1, 2010 opinion and order where the court specifically addresses wife's occupation of the marital home:

> Defendant's reasonable housing expenses are part of that need, regardless of the fact that the house was part of the equitable distribution. Defendant should not be required to invade the principal of her estate to relieve the obligation of plaintiff whose actions brought an end to the marriage. The home-related expenses she seeks are reasonable and do not defy Judge Lumpkin's Order . . . .

In context, the court's discussion of principal relates only to the marital home, not wife's Scott & Stringfellow account. Because the circuit court did not make the specific finding husband asserts, we will not address this alleged error on appeal.

Assignment of Error No. 7: "The [circuit] court erred by allowing [wife] to continue to receive support from [husband] without first exhausting all sources of possible income." There is no merit to this argument, and it can be disposed of summarily. "The law does not require the

The remaining assignments of error can be consolidated into three areas of dispute, and we address each below. As the "alleged errors involve factual findings by the trial court, we review the evidence in the light most favorable to the party who prevailed below." Lewis v. Lewis, 53 Va. App. 528, 536, 673 S.E.2d 888, 892 (2009). "On interpretations of the law as it applies to those facts, however, we review the trial court's ruling *de novo*, without deference to the prevailing holding below." Id. Further, this Court's "standard of review requires that we presume the judgment of the trial court to be correct and that we sustain its finding unless it is plainly wrong or without evidence to support it." M. Morgan Cherry & Assocs. v. Cherry, 38 Va. App. 693, 702, 568 S.E.2d 391, 396 (2002) (*en banc*).

## A. Material Change in Circumstances

Husband first argues that the circuit court erred in finding that the growth of wife's assets constitute a material change in circumstances. He argues this point in three different assignments of error.[2]

---

spouse who seeks support to exhaust his or her own estate in order to qualify, relieving the other spouse of all obligation of support until that estate is depleted." Zipf v. Zipf, 8 Va. App. 387, 398-99, 382 S.E.2d 263, 270 (1989).

Assignment of Error No. 9: "The [circuit] court erred by finding that [wife] has reduced, by necessity, her standard of living since her divorce from [husband]." Contrary to husband's contention, the circuit court did not make a finding that wife reduced her lifestyle "by necessity." The circuit court found that "[wife] is not living extravagantly or beyond her means" and that "she testified convincingly that her lifestyle has in fact decreased since the divorce," but the circuit court did not find that wife reduced her standard of living by necessity. Because the circuit court did not make the finding that husband assigns error to, we do not address the alleged assignment of error.

Assignment of Error No. 11: "[Husband] incorporates by reference all arguments concerning [wife's] 'need,' her income and imputable income that were made in [husband's] pretrial and post-trial briefs." This statement does not assign any error for this Court to review. Further, this Court will not address arguments incorporated by reference. See Rule 5A:19(e).

[2] We consolidate what husband argues as the following separate assignments of error in his brief:

Assignment of Error No. 4: "The [circuit] court erred by finding that the growth of [wife's] Scott & Stringfellow portfolio was anticipated at the time of Judge Lumpkin's final

Code § 20-109(A) provides that "[u]pon the petition of either party the court may increase, decrease, or terminate the amount or duration of any spousal support . . . as the circumstances may make proper." "The moving party in a petition for modification of support is required to prove both a material change in circumstances and that this change warrants a modification of support." Schoenwetter v. Schoenwetter, 8 Va. App. 601, 605, 383 S.E.2d 28, 30 (1989). "'The material change in circumstances must have occurred after the most recent judicial review of the award, and must bear upon the financial needs of the dependent spouse or the ability of the supporting spouse to pay.'" Barrs v. Barrs, 45 Va. App. 500, 506, 612 S.E.2d 227, 230 (2005) (quoting Moreno v. Moreno, 24 Va. App. 190, 195, 480 S.E.2d 792, 795 (1997)) (internal quotations and citations omitted).[3]

While no reported case presents precisely the same facts as the case at bar, Barrs is instructive to our analysis in this case. In Barrs, this Court found that the circuit court was plainly wrong in concluding that the wife's receipt of passive income from the marital award constituted a change in circumstances. Barrs, 45 Va. App. at 509, 612 S.E.2d at 231. The husband sought to decrease his spousal support obligation in 2003, arguing as the material change in circumstances that the wife "now has $60,000 annual passive income and her net worth exceeds $1.6 million that she did not have in 1995." Id. at 505, 612 S.E.2d at 229. The facts showed that the "original equitable distribution award would clearly generate a steady and foreseeable stream of income for wife." Id. at 508, 612 S.E.2d at 231. This Court concluded that

spousal support order, and that the growth that has been accrued was, thus, not a material change in circumstances."
    Assignment of Error No. 14: "The [circuit] court erred by finding that the only material change in circumstances was the growth of [wife's] IRA account."
    Assignment of Error No. 19: "The [circuit] court erred by failing to find that the increase in [wife's] net worth is a material change that relates to her ability to support her demonstrated need."

[3] Husband conceded that he has the ability to pay wife's spousal support award.

at the time of the 1995 award, "passive income to the wife in the form of interest on the marital award was foreseeable." Id. at 509, 612 S.E.2d at 231.

As of the 1992 order concerning spousal support in this case, wife's investment funds were valued at $366,000, and wife's investment income was expected to be four percent, resulting in monthly income of $1,220. In 2010, the circuit court found that the dramatic increase in the value of wife's equitable distribution investment asset, from $366,000 to $1.8 million, was foreseeable by Judge Lumpkin. The circuit court continued, "Further, income attributable to interest generated from [the] principal of [an] equitable distribution award does not constitute [a] material change of circumstances warranting modification of support where interest is foreseeable. Barrs, 45 Va. App. at 509, 612 S.E.2d at 231."

While the circuit court may have erred in concluding that an increase in principal from $366,000 to $1.8 million was foreseeable by Judge Lumpkin, its finding that the increase does not constitute a material change in wife's circumstance is nevertheless correct. Wife has the same investment asset in 2010 as she had in 1992; the character of the asset as investment principal has not changed. That it could be sold and realized as income is irrelevant, because the law does not require wife to invade the principal of her estate to qualify for spousal support. Klotz v. Klotz, 203 Va. 677, 680, 127 S.E.2d 104, 108 (1962); Zipf v. Zipf, 8 Va. App. 387, 398-99, 382 S.E.2d 263, 270 (1989). Further, wife's stream of income from the asset has not changed significantly, increasing from $1,220 per month in 1992, to $1,893 per month in 2010. Regardless of the foreseeability of wife's asset appreciation, the appreciation does not constitute a material change in wife's circumstances.

Our analysis with regard to the marital residence is the same as it is for the investment asset. While the estate has grown in value, wife has not sold the marital residence and consequently has not realized any income from it. Therefore, she has not experienced a material

change in circumstances with regard to the marital residence. Thus, we find no error in the circuit court's judgment regarding a material change in wife's circumstances.

## B. Wife's Continuing Need for Support

Husband next argues that "the [circuit] court erred in not terminating spousal support and in setting spousal support at $4,960 [per] month because it erred in assessing [wife's] need."[4]

Wife presented evidence as to the amount she spends monthly on the mortgage, real estate tax, gifts, charity, and legal fees in her expense sheets. Husband argues that the circuit court erroneously included these expenses in determining wife's need. The circuit court found that "[husband] failed to prove any of the other elements [aside from the car payments, auto repairs, and IRA deposits] on [wife's] need worksheet were inappropriate." This Court will not overturn a factual finding "unless plainly wrong or without evidence to support it." Bchara v. Bchara, 38 Va. App. 302, 313, 563 S.E.2d 398, 403 (2002).

## 1. Home Related Expenses

Initially we note that reconsideration of whether wife's mortgage payment and real estate tax should be included in her need for spousal support would violate the principle of res judicata,

---

[4] We consolidate here the following assignments of error in husband's brief: Assignment of Error 5:

> The [circuit] court erred by failing to impute income to [wife] as a result of her decision to remain the sole resident at the former marital residence and the significant increase in the equity thereof, and allowing as expenses items related to the upkeep and maintenance of the former marital home in direct contravention with Judge Lumpkin's prior orders.

Assignment of Error 6: "The [circuit] court erred by including items of expense such as donations to charity and other items which do not qualify as 'need.'"
Assignment of Error 13: "The [circuit] court erred in its determination of the amount it found to be [wife's] 'need.'"

as this Court previously affirmed the circuit court's inclusion of these items in determining

wife's need.  Wright v. Wright, Rec. No. 2180-92-2 (Va. Ct. App. Sept. 7, 1993).

Further, husband mischaracterizes Judge Lumpkin's order by suggesting that it ordered

wife to be solely responsible for the mortgage after January 1, 1993.  Judge Lumpkin

"question[ed] whether there is any legal obligation for [husband] to assume responsibility for the

mortgage payment."  However, the order continues,

> Beginning January 1, 1993, [husband] will only be responsible for
> home-related expenses of [wife] necessary to keep the latter living
> in the general style to which she became accustomed during the
> marriage.  He will not be required to bear any extra costs made
> necessary by a decision to remain in the marital home.

Husband argues that wife perpetuated the mortgage by refinancing in 1998 and that this

constitutes an "extra cost," as does the $970 per month real estate tax on the marital residence.[5]

In keeping with Virginia law, Judge Lumpkin's order required husband to keep wife living in the

general style to which she became accustomed during the marriage.  See Stubblebine v.

Stubblebine, 22 Va. App. 703, 725, 473 S.E.2d 72, 82 (1996).  Further, "a spouse's reasonable

housing related expenses must be considered when determining that spouse's needs . . . ."

McKee v. McKee, 52 Va. App. 482, 496-97, 664 S.E.2d 505, 512 (2008).  Considering that wife

reduced her mortgage payment since the 1992 order and that a reasonable mortgage payment is

proper for the court to consider in setting spousal support, the circuit court did not err by

including wife's mortgage payment and real estate tax in assessing her need for spousal support.

### 2.  Gifts and Charitable Expenses

Wife's expense sheet included $426 per month in gifts and $437 per month in charity and

church donations.  Wife gave gifts and charitable contributions during the marriage, and these

---

[5] Wife reduced her mortgage payment to $399 per month by refinancing.  In 1992, wife's mortgage payments and real estate tax totaled $21,348; in 2009 they totaled $4,791.36.

expense items were included in her original award for spousal support.  Husband did not present

evidence that wife's expenses in these categories are unreasonable.  Therefore, the circuit court

did not err in allowing wife to include these expenses in her need for spousal support.

### C.  Wife's Ability to Produce Income

Husband further argues that the circuit court was plainly wrong in not terminating

spousal support because wife has the ability to produce all the income she needs with her own

assets and potential sources of income.[6]

---

[6] We address here the following assignments of error:

Assignment of Error 1:  "The [circuit] court erred by failing to impute income to [wife] based upon her ability to obtain social security benefits and to draw down fully her IRA account based upon her life expectancy of 85 years."

Assignment of Error No. 2:  "The [circuit] court erred by failing to impute income or count as income the growth of [wife's] Scott & Stringfellow account; or, alternatively by not imputing income to [wife] which could be earned as a result of prudent changes that [wife] could make to create more income and less growth."

Assignment of Error No. 5:  [Addressed above.  See footnote 5, *supra*.]

Assignment of Error No. 7:  [Defaulted.  See footnote 1, *supra*.]

Assignment of Error No. 8:  "The [circuit] court erred by implicitly finding that [wife] has a 'need' which cannot be sustained by her assets and activities alone."

Assignment of Error No. 9:  [Defaulted.  See footnote 1, *supra*.]

Assignment of Error No. 10:  "The [circuit] court erred by finding that only dividends and cash distributions from [wife's] Scott & Stringfellow account could be considered for the purpose of determining [wife's] total yearly income."

Assignment of Error No. 12:

> The [circuit] court erred by failing to require [wife] to begin spending the gain/growth that she has earned over the years from her Scott & Stringfellow account which began at a value of $366,000 and which was worth almost $1,800,000 at the trial of this matter; and, even if [wife] was not required to realize past gains, the [circuit] court erred by failing to order [wife] to liquidate a portion of her future gain to accommodate and provide for her own "need."

Assignment of Error No. 16:  "The [circuit] court erred in setting [wife's] award at $4,690 [per] month, and by setting any amount of award of continued support and maintenance of [wife]."

Assignment of Error No. 17:  "The [circuit] court erred by failing to impute income to [wife] based on her education and training as a registered nurse, and her ability to earn a living and derive income based on that education and training."

- 8 -

### 1. Wife's Investment Income

The circuit court did not abuse its discretion in finding that wife has a need for support. The circuit court included in wife's income the dividends and interest income generated by her Scott & Stringfellow account, but declined to include as income the unrealized growth in the principal of the account. "The decision to impute income is within the sound discretion of the trial court and its refusal to impute income will not be reversed unless plainly wrong or unsupported by the evidence." Blackburn v. Michael, 30 Va. App. 95, 102, 515 S.E.2d 780, 784 (1999). Even if a spouse seeking support possesses a sizable estate, the law does not require the spouse to invade that estate to qualify for spousal support. Klotz, 203 Va. at 680, 127 S.E.2d at 108; Zipf, 8 Va. App. at 398-99, 382 S.E.2d at 269. Additionally, an investment expert testified that wife's investment plan is "very reasonable." Therefore, the circuit court did not abuse its discretion by refusing to impute wife's investment growth as income.

### 2. Wife's IRA and Social Security Benefits

Husband further argued that the circuit court should have imputed income to wife based upon her ability to obtain social security benefits and to draw down fully her IRA account.

Husband presented evidence that wife could begin to withdraw from her IRA and social security. The court imputed income to wife in the amount of one half of her annual IRA income minus 30% to account for taxes. Expert testimony included that wife would have nothing left in her IRA account by 85 years of age if she elected to draw the full amount as urged by husband; that wife would collect 5% less than full retirement from social security if she withdrew benefits at her current age of 65 than if she waited until age 66, that wife's life expectancy is longer than husband's, and that wife should account for the possibility of discontinued spousal support in her

---

Assignment of Error No. 18: "The [circuit] court erred by failing to find that [wife] has the ability to produce all income she needs and to satisfy more than all her demonstrated needs with her own assets."

long term financial planning. Therefore, the record supports the circuit court's refusal to impute more income to wife based on her IRA and social security.

### 3. Wife's Employment Income

Regarding wife's earning capacity, husband presented no evidence as to what income wife should or could earn based on her education and training. Thus, the circuit court did not err in finding wife's earning capacity to be $12,400 per year, wife's current employment earnings.

### D. Attorney's Fees

Finally, husband argues in Assignment of Error No. 15 that the circuit court "erred by awarding [wife] attorney's fees, as well as in its determination of the amount of attorney's fees awarded." Husband asserts that the circuit court abused its discretion in awarding wife attorneys' fees of $38,416.42 while simultaneously allowing her to collect $1,000 per month in legal fees as included in her need, and in awarding wife $38,416.42 in attorney's fees.

Wife testified that the legal fees she claimed on her monthly expense sheet are expenses mostly associated with this case. Wife presented a separate exhibit proving that she incurred $38,416.42 in legal fees and costs defending against husband's efforts to decrease her spousal support award. The circuit court acted reasonably in allowing wife to claim legal expenses in her need for spousal support, as wife may have post-trial legal expenses, and in awarding wife attorneys' fees, as she presented evidence of the fees and costs she incurred in this case. "An award of attorney's fees to a party in a divorce suit is a matter for the trial court's sound discretion after considering the circumstances and equities of the entire case." Artis v. Artis, 4 Va. App. 132, 138, 354 S.E.2d 812, 815 (1987). We will not disturb the circuit court's award of attorneys' fees because the circuit court did not abuse its discretion in making the award. However, we will not award wife attorney's fees for this appeal, as, despite the criticisms already noted with regard to husband's brief and arguments, we nevertheless find that there is some merit

to husband's argument that the circuit court should impute income to wife based on her ability to draw more income from her IRA and social security benefits.

## II.  CONCLUSION

For these reasons, we affirm the judgment of the circuit court.

Affirmed.